Tracey S. Bernstein (TB 0405)
Himmel & Bernstein, LLP
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY 10010
(212) 631-0200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

RAYMOND VAN COTT,

                       Plaintiff,

       -against-

MELLON FINANCIAL CORPORATION,

                     Defendant.
---------------------------------------------------------------x

**ATTORNEY DECLARATION IN IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS MATTER TO STATE COURT**

2007 Civ. 5578 (MGC)(RLE)

ECF FILED

      **Tracey S. Bernstein, Esq.**, an attorney duly admitted to practice law in the State of New York, declares the following, under penalty of perjury, pursuant to 28 U.S.C. §1746:

1.      I am the attorney for plaintiff Raymond Van Cott ("plaintiff" or "Mr. Van Cott").

2.      I make this declaration in support of plaintiff's motion pursuant to 28 U.S.C. §1447(c) to remand this matter back to New York State Supreme Court, New York County on the grounds that this Court lacks subject matter jurisdiction to hear and determine the claims in this matter.

3.      On or about May 1, 2007, plaintiff filed a summons and complaint (the "Complaint") in the New York State Supreme Court, New York County alleging a single cause of action for breach of contract against defendant Mellon Financial Corporation ("Mellon" or "defendant"). (A copy of the Summons and Complaint is annexed hereto as Exhibit A.)

4.      The Complaint alleges that Mellon failed to pay Mr. Van Cott 52 Weeks of salary under the terms of a Retention Agreement dated December 3, 2004 (the "Retention Agreement") when it became due and payable as a result of the sale of the business unit Mr. Van Cott was

assigned to and the transfer of Mr. Van Cott's employment to the purchaser. (A copy of the Retention Agreement is annexed hereto as Exhibit B.)

5.      On or about June 11, 2007, defendant filed a Notice of Removal with this Court transferring the action to this Court on the sole grounds that plaintiff's state law claim of breach of contract was pre-empted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.*, as amended ("ERISA"). (A copy of the Notice of Removal is annexed hereto as Exhibit A.)

6.      A copy of the Mellon Displacement Program Summary Plan Description is annexed hereto as Exhibit C.

7.      Copies of relevant pages from defendant's Memorandum of Law in Support of its Motion to Dismiss are annexed hereto as Exhibit D.

8.      As more fully set forth in the accompanying memorandum of law in support of this motion, defendant has improperly removed this matter as plaintiff is not seeking the payment of benefits under ERISA and nowhere in the complaint does he allege that he is seeking such relief. Instead, plaintiff is seeking the payment of money under the terms of a contract provided to Mr. Van Cott to induce him to stay on with Mellon while it attempted to find a buyer for the business unit to which plaintiff was assigned. (Exhibits A and B.) As such, this Court lacks subject matter jurisdiction to hear and determine this matter.

9.      Upon the foregoing, I respectfully request that plaintiff's motion should be granted in its entirety and this action should be remanded back to the New York State Supreme Court, New York County.

10.     I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Executed on this 16th day of August, 2007.

_____
TRACEY S. BERNSTEIN (TB-0405)

2

EXHIBIT A

JUDGE CEDARBAUM          07 CV 5578 

Paul P. Rooney (PR-0333)
REED SMITH LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5400

Attorneys for Defendant Mellon Financial Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RAYMOND VAN COTT                          : 07 Civ. _____
                                          :
                    Plaintiff,            :                      JUN 1 1 2007
        - against -                       : **NOTICE OF REMOVAL**
                                          :
MELLON FINANCIAL CORPORATION              :
                                          :
                    Defendant.            :
-------------------------------------------------------X

        Pursuant to 28 U.S.C. § 1441, Defendant Mellon Financial Corporation

("Mellon") gives notice that Raymond Van Cott v. Mellon Financial Corporation is hereby

removed to the United States District Court for the Southern District of New York from the

Supreme Court of the United States of New York, New York County, Index No. 601440/07,

Filing Date May 1, 2007, where said case was originally filed and is currently pending. A copy

of all process, pleadings and orders served upon the defendant Mellon Financial Corporation is

filed with this Notice as Exhibit A.

        1.      The Complaint in the above-captioned action was filed in the Supreme

Court of the State of New York, County of New York on or about May 1, 2007 and was served

on the Defendant by regular mail on May 14, 2007.

        2.      No further proceedings have occurred.

3.      Plaintiff alleges he was an employee of Mellon Financial Corporation ("Mellon").  Complaint at ¶ 7.

4.      Plaintiff alleges as part of his employee benefits, he was provided notice of his eligibility to potentially receive a "Special Retention Package."  Complaint at ¶ 15.

5.      The Special Retention Package detailed Plaintiff's potential rights to the payment of a Retention Bonus Award, a Supplemental Retention Bonus Award, and a Transition Package.  Complaint at ¶ 17.

6.      As alleged in paragraph 17(c) of the Complaint, a "Transition Package" consists of severance benefits in form of outplacement services and severance pay equal to 52 weeks of base salary in the event that becomes unemployed under conditions in which he is found to be "Displaced" by and under the terms of the Mellon Financial Corporation Displacement Program ("ERISA Plan").  The ERISA Plan is an employee welfare benefit plan, as defined by the Employee Retirement Income Security Act of 1974 § 3(1), 29 U.S.C. §§ 1002(1), *et. seq.*, as amended ("ERISA").

7.      The severance pay Plaintiff seeks is an employee welfare benefit, as defined by ERISA § 3(1), 29 U.S.C. § 1002(1).  This severance pay is a supplemental benefit that is offset by, and payable pursuant to, determinations made by the ERISA Plan in accordance with its administrative procedures.  Complaint at ¶¶ 17, 18, 33.

8.      Plaintiff asserts that he was "Displaced," as defined by the ERISA Plan. Complaint at ¶ 18; Displacement Program at pp 2-3.  Plaintiff exhausted the administrative remedies under the terms of the ERISA Plan.

10.     Because Plaintiff's claim seeks ERISA benefits and, in addition, "relate[s] to" an employee benefit plan, pursuant to ERISA § 514, 29 U.S.C. § 1144, Plaintiff's purported State Law claim is governed and displaced by ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and is completely preempted by ERISA. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

11.     For the reasons set forth in Paragraphs 1 through 10 above, the present action is a civil action over which this Court has original jurisdiction under the provisions of 29 U.S.C. § 1331 and ERISA § 502(e), 29 U.S.C. § 1132(e).

12.     This is a civil action which may be removed this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441, as a civil action founded upon claims or rights arising under the Constitution, laws or treaties of the United States.

15.     The procedural requirements of 28 U.S.C. § 1446 have been met. The initial pleading in this case from which it could be ascertained that the action was removable was the Verified Complaint. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b), being filed within 30 days of the date on which the removing Defendants received that document.

WHEREFORE, Mellon Financial Corporation provides notice that the present civil action commenced against it has been removed to this Court.

Respectfully submitted,

REED SMITH LLP

By:

Paul P. Rooney
599 Lexington Avenue
New York, New York  10022
(212) 521-5435

Attorneys for Mellon Financial Corporation

Dated: June 11, 2007
       New York, New York

- 4 -

## CERTIFICATE OF SERVICE

I, Paul P. Rooney, Esq., hereby certify that on June 11, 2007, I caused the annexed

NOTICE OF REMOVAL to be served upon Plaintiff via United States Mail – First Class by

causing an envelope containing said papers with sufficient postage to effect delivery to be

deposited in an official depository addressed as follows:

> Tracey S. Bernstein
> Himmel & Bernstein, LLP
> 928 Broadway, Suite 1000
> New York, New York 10010

Paul P. Rooney

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————x

RAYMOND VAN COTT

                                        Plaintiff,

          -against-

MELLON FINANCIAL CORPORATION,

                                        Defendant,

————————————————————————x

Plaintiff designates New York
County as the place of trial

The basis of the venue is
the defendant resides in New York
County

Index No. 601440/07

**SUMMONS**

Plaintiff's address: 1347 Rustic Ridge
Rd, Yorktown Heights, NY 10598

NEW YORK
COUNTY CLERK'S OFFICE

MAY 1 2007

NOT COMPARED
WITH COPY FILE

To the above named defendant(s):

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive

of the day of service (or within 30 days after the service is complete if this summons is not

personally delivered to you within the State of New York); and in case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: April 18, 2007

Defendant's Address:

MELLON FINANCIAL CORPORATION
200 Park Avenue
New York, NY 10166

HIMMEL & BERNSTEIN, LLP

By
          Tracey S. Bernstein
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, New York 10010
(212) 631-0200

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------x

RAYMOND VAN COTT,

                              Plaintiff,                    **VERIFIED COMPLAINT**

              -against-                                     Index No.: 601440/07

MELLON FINANCIAL CORPORATION,                              Filing Date: 5|1|07

                              Defendant.
--------------------------------------------------------------------x

 

 

Plaintiff RAYMOND VAN COTT, by his attorneys Himmel & Bernstein, LLP, complaining of defendant MELLON FINANCIAL CORPORATION alleges as follows:

 

1.     Plaintiff Raymond Van Cott brings this action against defendant for breach of a Special Retention Agreement he entered into with defendant Mellon Financial Corporation.

 

### I. THE PARTIES

2.     Plaintiff Raymond Van Cott ("plaintiff" or "Mr. Van Cott") is a citizen of the State of New York and resides at 1347 Rustic Ridge Road, Yorktown Heights, New York.

3.     Defendant Mellon Financial Corporation ("defendant" or "Mellon") at all times relevant hereto is, upon information and belief, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State and County of New York at 200 Park Ave, New York, New York.

4.     Defendant is in the business of providing banking, financial and investment services to individuals and institutions.

## II. BACKGROUND

5.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 4 above, with the same force and effect as if fully set forth herein.

7.    On or about July 1998, plaintiff was hired by Mellon as a Senior Vice President to run technology for Mellon's retail bank at Mellon's home office in Pittsburgh, Pennsylvania.

8.    At the time he was hired in July 1998 Mr. Van Cott was had 160 full-time employees reporting to him and managed an annual budget of $22 million.

9.    In late 1999, plaintiff was asked to move to the New York Area to manage technology for Mellon's two New York based companies: Dreyfus Mutual Funds and Buck Consulting.  The total number of employees reporting to Mr. Van Cott increased to 280 and his annual budget responsibility increased to approximately $40 Million.

10.    In 2001 Mellon, increased Mr. Van Cott's responsibilities through the acquisition of Mellon Investor Solutions, formerly Chase Mellon Investor Solutions, by adding another 175 full time employees and increasing his budget responsibilities to $65 million.

11.    In January 2002, Mellon promoted plaintiff to Regional Chief Information Officer of New York/ New Jersey.  Additionally Mellon acquired the Human Resources Outsourcing firm named Unifi from Price Waterhouse & Coopers.  This acquisition increased the total number of employees reporting to him to 950 and the size of his annual budget increased to $148 Million.

12.    In January 2003, Mellon merged its Investor Solutions business with its Human Resources business to form the Human Resources and Investor Solutions Sector ("HR&IS").  In May 2003, plaintiff was promoted to SVP and Sector Chief Information Officer.  This was in addition to his duties as Regional CIO which still included Dreyfus Mutual Funds and Regional Infrastructure.

13.    Upon his promotion to HR&IS sector CIO, plaintiff was making $300,000 in annual salary and received a bonus from Mellon for his work in 2003 of $130,000.

14.    In or about the Fall of 2004 Mellon began negotiating to sell the HR&IS business.

15.    On or about December 3, 2004, plaintiff and Mellon entered into a Special Retention Package (the "Retention Agreement"). The purpose of the Retention Agreement was to provide plaintiff with certain significant monetary payments in exchange for his commitment to stay with Mellon and forgo other employment opportunities while Mellon was negotiating and completing the sale of HR&IS to ACS.  (A copy of this Special Retention Agreement is annexed hereto and incorporated herein by reference as Exhibit A.)

16.    Plaintiff and other senior executives were offered this Special Retention Package as Mellon considered them to be key employees who were essential to closing the deal with ACS and did not want them to look for work elsewhere for work despite the potential harm to their job search and careers from waiting until the deal was completed.

17.    Under the terms of the Retention Agreement, if the six (6) conditions outlined therein were met (i.e., the sale to ACS closed, plaintiff was still employed at the time, etc.) plaintiff would be entitled to receive the following payments:

   a.    A "Retention Bonus Award" in the amount of $300,000.

   b.    A "Supplemental Retention Bonus Award" of 0 to 6 months (target of 3 months) of plaintiff's base salary based on the discretion of Vice Chairman, James Aramanda.

   c.    A "Transition Package" consisting of 52 weeks of plaintiff's base salary and Executive Level Outplacement Services in the event that plaintiff would be considered "Displaced" as that term is defined under the terms of the Mellon Financial Corporation Displacement Program (the "Displacement Program"), and executed a Confidential Separation Agreement and Release.  (See Exhibit A.)

3

18.    Under the terms of the Displacement Program, an employee is considered Displaced, and therefore eligible for displacement benefits, where the employee's employment has been transferred by Mellon to another employer as a result of a sale of a business and the position to be provided to the employee involves "a significant change in responsibilities from those assigned to the employee immediately prior to the sale or transfer."

19.    At the time plaintiff entered into the Retention Agreement he had an annual salary of $300,000 and received a bonus for his work in 2004 of $130,000. Plaintiff also received an annual stock option award valued at approximately $125,000.

20.    At the time plaintiff entered into the Retention Agreement he was reporting to the Vice Chairman and Corporate CIO, Allan Woods, and Executive Vice President Kevin Shearan. Plaintiff and indirectly reporting to Vice Chairman and CEO of Dreyfus, Steven Canter, and Vice Chairman and Sector CEO of HR&IS, James Aramanda.

21.    At the time plaintiff entered into the Retention Agreement, he was responsible for managing approximately 900 full-time employees and had annual budget responsibility of approximately $148 million.

22.    In March 2005 Mellon decided not to sell Investor Solutions in total. Instead, it entered into a sale agreement for the Human Resources portion of HR&IS with Affiliate Computer Services (ACS).

23.    On or about May 1, 2005, Mellon closed the ACS deal and plaintiff's employment was transferred to ACS.

24.    Just prior to the closing of the ACS deal on or about May 25, 2005, plaintiff's annual base salary remained $300,000.

25.    Also just prior to closing, Mellon elected to retain as part of Dreyfus Mutual Funds and the Investor Solutions businesses 290 of the 700 full time employees that Mr. Van Cott was responsible for.

4

26.    As a result of the closing of Mellon's sale of HR&IS to ACS, plaintiff's employment was transferred to ACS.

27.    Upon his transfer to ACS, due to terminations of superfluous employees and staff transfers to other areas of ACS, plaintiff was now managing approximately 162 full-time employees and overseeing an annual budget of approximately $30 million. This translates into a decrease of more than 78% of his supervisory responsibilities and a decrease of more than 73% of his budgetary responsibilities from the time he entered into the Retention Agreement.

28.    In addition, plaintiff's transfer to ACS resulted in a drop in reporting level. Instead of reporting to individuals at the Vice Chairman, CEO, CIO and Executive Vice President level (as he did at Mellon), plaintiff found himself reporting to a Managing Director in Charge of ACS Human Resources Outsourcing Business.

29.    Plaintiff's new position and responsibilities at ACS would be, at best, equivalent those he held when he first took the Senior Vice President's position at Mellon in 1998.

30.    As a result of these decreases in reporting level, budgetary oversight and supervisory responsibility, plaintiff suffered a "significant change in responsibilities from those assigned to [plaintiff] immediately prior to the sale or transfer" entitling plaintiff to 52 weeks of Transition Pay under the terms of the Retention Agreement.

31.    As a result of the closing of the sale of HR&IS to ACS all the conditions necessary to trigger payment to Mr. Van Cott of his Retention Bonus Award, Supplemental Retention Bonus Award and Transition Pay were met.

32.    In accordance with the terms of the Retention Agreement, Mellon paid to Mr. Van Cott both the Retention Bonus Award and a Supplemental Bonus Award.

33.    Mellon, despite the clear evidence that Mr. Van Cott was "Displaced" as that term is defined under the Displacement Program has refused to pay Mr. Van Cott his Transition Payment of 52 weeks of his base salary.

5

### III. AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

34.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 above, with the same force and effect as if fully set forth herein.

35.   On or about December 3, 2004 the parties entered into the Retention Agreement.

36.   On or about May 1, 2006 Mellon closed the sale of its HR&IS business to ACS and transferred plaintiff's employment to ACS as part of that sale.

37.   At the time the ACS deal closed, all of the conditions necessary for plaintiff to receive payments under the Retention Agreement were met as set forth above.

38.   As a result of the conditions set forth in the Retention Agreement being met, plaintiff was entitled to receive, among other payments, his Transition Pay of 52 weeks of salary at his annual base salary of $300,000 as plaintiff suffered "a significant change in responsibilities from those assigned to [plaintiff] immediately prior to the sale or transfer" as set forth above.

39.   At the time he was Displaced, and at all times since the sale of HR&IS to ACS, plaintiff has stood ready, willing and able to execute a Confidential Separation Agreement and Release in exchange for his 52 weeks of Transition Pay.

40.   Despite repeated requests by Mr. Van Cott for payment of his Transition Pay, defendant has refused to provide plaintiff with a Confidential Separation Agreement and Release and to pay plaintiff the $300,000 in Transition Pay he is due and owing under the terms of the Retention Agreement.

41.   As a result of defendant's refusal to provide plaintiff with a Confidential Separation Agreement and Release and to pay plaintiff his $300,000 due him as Transition Pay defendant is in breach of the Retention Agreement.

42.   As such, plaintiff is entitled to a judgment in an amount no less than $300,000 from defendant plus interest.

6

WHEREFORE, plaintiff demands judgment:

(a) On the FIRST CAUSE OF ACTION against defendant in an amount no less than $300,000 together with the interest, costs and disbursements of this action,

(b) Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       April 18, 2007


                              HIMMEL & BERNSTEIN, LLP


                              BY:_____
                                 TRACEY S. BERNSTEIN
                              Attorneys for Plaintiff
                              928 Broadway, Suite 1000
                              New York, NY 10010
                              (212) 631-200

## VERIFICATION

I have carefully read the foregoing Complaint, and I know and understand the contents thereof, the same are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
Raymond Van Cott

Sworn to before me on the
18 th day of April, 2007.

_____
NOTARY PUBLIC

PARVIZ DAVALLOO
Notary Public, State of NEW YORK
NO. 01DA5087713
Qualified in Westchester County
Term Expires Nov. 3, 2009

8

## CERTIFICATE OF SERVICE

I, Paul P. Rooney, Esq., hereby certify that on June 11, 2007, I caused the annexed

NOTICE OF REMOVAL to be served upon Plaintiff via United States Mail – First Class by

causing an envelope containing said papers with sufficient postage to effect delivery to be

deposited in an official depository addressed as follows:

> Tracey S. Bernstein
> Himmel & Bernstein, LLP
> 928 Broadway, Suite 1000
> New York, New York 10010

Paul P. Rooney

EXHIBIT B

 **Mellon**

Human Resources & Investor Solutions

James D. Aramanda
*Vice Chairman*

December 3, 2004

Mr. Raymond Van Cott
1347 Rustic Ridge Road
Yorktown Heights, NY 10598

Re:     Confidential Special Retention Package

Dear Ray:

As we have discussed, Mellon has made the decision to divest the Human Resources & Investor Solutions Sector ("HR&IS"). In view of this decision, Mellon has established a Confidential Special Retention Package, which it will provide to certain employees in the HR&IS Sector who will be instrumental in the divestiture and related transition. As one of the employees to whom this is offered, you will be eligible for the Special Retention Package outlined below if and when the following conditions are met:

1.  You remain an *Active[1]* Mellon employee until the *Closing* and Mellon *Releases* you; and

2.  You are not on a Final Written Warning under the Corrective Action Policy; and

3.  You actively participate and support the critical client retention measures and maximize the value of the business during the sales process; and

4.  All of your Mellon business expenses, including your Mellon business credit card, are current; and

5.  You abide by your Mellon confidentiality obligations, including, but not limited to, any provisions pertaining to confidentiality set forth in any agreement you previously signed; and

6.  Mellon *Closes* on the sale and Mellon *Releases* you as the direct result of the *Closing*.

*Providing* you meet all of the above necessary conditions, you will receive the following Confidential Special Retention Package:

---

[1] The definitions of the italicized words are set forth in Appendix A.

Overpeck Centre ▪ 85 Challenger Road ▪ Ridgefield Park, NJ 07660
(201) 296-4463 Office ▪ (201) 296-4004 Fax ▪ aramanda.j@mellon.com
www.mellon.com

*A Mellon Financial Company.*™

Page 2

 **Mellon**

**Retention Bonus Award** in the amount of $300,000; and

**Supplemental Retention Bonus Award** of 0 to 6 months (target of 3 months) of your base salary in effect on November 1, 2004, determined at my sole discretion and based upon the following criteria:

- Positive participation in sales process; and
- Acting in the best interest of Mellon, including interaction with clients and all matters impacting Mellon's financials; and
- Overall leadership, including demonstrated support of Mellon and maintaining positive staff morale.

Both the Retention Bonus Award and the Supplemental Retention Bonus Award, less all applicable taxes and deductions, will be payable within 60 calendar days after the date that Mellon and a Buyer *Close* on the sale and Mellon, in its sole discretion, *Releases* you for reasons other than cause from your assignment because Mellon, in its sole discretion, determines you have satisfied your responsibilities.

**Transition Package** In addition to the Retention Bonus Award and Supplemental Retention Bonus Award, you may be eligible for a Transition Package, if you are *Displaced* in accordance with the Mellon Financial Corporation Displacement Program as a direct result of the *Closing* and you execute a Confidential Separation Agreement and Release waiving any potential claims against Mellon. The Transition Package consists of:

**Transition Pay** As otherwise in compliance with applicable laws and regulations, you will receive a Maximum Separation Pay Amount in the equivalent of fifty-two (52) weeks of your base salary at the time of your *Displacement*, less all applicable taxes and deductions (**"Maximum Separation Pay Amount"**). Such Maximum Separation Pay Amount shall be reduced by the full amount of the *Displacement* pay, Supplemental Unemployment Benefits and/or separation or severance pay provided under a previously provided separate agreement (before taxes and deductions) paid to you. Such Transition Pay (except as noted below) will be paid in equal installments on regularly scheduled pay dates. It is recognized and agreed that should you commence other new employment, other than at Mellon, prior to the payment of the final installment of Transition Pay, Mellon will pay any remaining installments in a lump sum, less all applicable taxes. In the event of a lump sum payout, your eligibility to participate in the Mellon 401(k) Retirement Savings Plan and the Mellon Bank Retirement Plan or other Qualified Plans ("Qualified Pension Plans") will be deemed to have terminated effective the day before any such lump sum payout is made and no portion of the Transition Pay represented by the lump sum payout shall be taken into account for any purpose under the Qualified Pension Plans. In addition, such lump sum payout will not be taken into account for any purpose under any nonqualified pension plan.

Page 3

 **Mellon**

**Executive Level Outplacement Services** You will also receive, at Mellon's expense through a company chosen by Mellon, **Executive Level Outplacement Services** (outplacement counseling, resume preparation, and phone and mail service), but Mellon will neither provide nor be responsible for any other costs or expenses incurred by you in a search for employment including, but not limited to, travel, lodging, meals or fees.

Questions regarding your Special Retention Package should be directed to Janice Duckworth at 412-234-7829.

Very truly yours,

James D. Aramanda

Enclosures

Nothing in this letter is an express or implied contract or promise for, or creates any rights to, continued employment or employment for a fixed term with Mellon Financial Corporation or its subsidiaries, affiliates, related companies or successor. You will remain at all times an employee at will. In addition, please be advised that nothing in this letter is to be construed as a notification of your *Displacement* under the Mellon Financial Corporation Displacement Program. In the event of a conflict between the Special Retention Package and the applicable plan documents or agreements, the plan documents or agreements control.

 **Mellon**

### Appendix A

### Definitions

**Active** means that you are on payroll in an "active" status and not on a leave of absence.

**Closing or Close** means the date that the sale of the HR&IS Sector is complete and consummated or in the event that the entire HR&IS Sector is not sold in the same transaction, Mellon *Closes* on the sale of a corporate entity, distinct line of business or portfolio in the HR&IS Sector to which you are assigned at the time of the *Closing*, including Shared Service Employees supporting the HR&IS Sector.

**Displaced or Displacement** has the meaning ascribed to it in the Mellon Financial Corporation Displacement Program ("Displacement Program"), as such may be amended from time to time. A copy of the current Displacement Program is enclosed. See pages 2 and 3 of the Displacement Program for information related to eligibility.

**Release** means that as the direct result of the *Closing* of the sale of the HR&IS Sector or a corporate entity, distinct line of business or portfolio within the HR&IS Sector to which you were assigned at the time of the *Closing*, including Shared Service Employees supporting the HR&IS Sector, that Mellon, in its sole discretion, determines you have satisfied your responsibilities and relieves you of your assignment for reasons other than for cause by:

    Transferring your employment to another position within Mellon (regardless of whether you accept);

    Transferring your employment to a Buyer (regardless of whether you accept); or

    Displacing you within the meaning of the Displacement Program.

EXHIBIT C





# MELLON FINANCIAL CORPORATION DISPLACEMENT PROGRAM

SUMMARY PLAN

DESCRIPTION

# *Mellon Financial Corporation*
# *Displacement Program*
# *Summary Plan Description*

**July 2002**

 **Mellon**

# Table of Contents

Administrative Information ...................................................................................................... 1

Eligibility and Benefits ........................................................................................................ 2
    Eligibility Requirements ........................................................................................................ 2
    Notification of Eligibility ...................................................................................................... 3
    Displacement Pay Components .............................................................................................. 4
    Continuous Service ............................................................................................................... 5
    Displacement Payment Method ............................................................................................. 6
    Notification of Employment .................................................................................................. 7
    Correction of Errors ............................................................................................................. 8
    Temporary Assignments ....................................................................................................... 8
    Career Transition Assistance ................................................................................................. 9
    Career Opportunities Program .............................................................................................. 9
    Offset of Benefits by Incentive Benefits ............................................................................... 9

Salary Administration ........................................................................................................ 11
    Employment Status ............................................................................................................. 11
    Merit Increases ................................................................................................................... 11
    Temporary Assignments ..................................................................................................... 11
    Lower Salary Grade Jobs .................................................................................................... 11
    Re-Employment .................................................................................................................. 12
    Death ................................................................................................................................. 12

Benefits .............................................................................................................................. 13
    Mellon Flexible Benefits Program ....................................................................................... 13
    Mellon 401(k) Retirement Savings Plan (401(k) Plan) ........................................................ 13
    Mellon Bank Retirement Plan ............................................................................................. 13
    COBRA ............................................................................................................................. 13
    Life Insurance .................................................................................................................... 13
    Disability/Workers' Compensation ..................................................................................... 14
    Relocation and Tuition Assistance ...................................................................................... 14
    Vacation ............................................................................................................................ 14
    Personal Leave of Absence ................................................................................................. 15
    Club Memberships .............................................................................................................. 15
    *ShareSuccess* Plan ........................................................................................................... 15
    Employee Stock Purchase Plan (ESPP) ............................................................................... 15
    Profit Bonus Plan, Restricted Stock Grants, Stock Options and  Other Incentive Plans .......... 16
    Automobile ........................................................................................................................ 16
    Additional Information ........................................................................................................ 16

Amendment or Termination of The Program ..................................................................... 17
    Effect of Conflicting Provisions .......................................................................................... 17

Unemployment Compensation ............................................................................................ 18

Claim and Appeal Procedures ........................................................................................... 19

Additional Facts About The Plan ....................................................................................... 20

ERISA Rights Statement .................................................................................................... 22

# Administrative Information

The Mellon Financial Corporation Displacement Program, known as the Mellon Bank Corporation Displacement Program prior to October 18, 1999, (the "Program") provides displacement payments and certain benefit coverages to eligible employees displaced from their jobs for business reasons not related to individual performance. The Program is provided voluntarily by Mellon Financial Corporation and is not based on any consideration for services rendered in the past or in the future. The Program is subject to revision or termination at Mellon Financial Corporation's discretion at any time.

The Program Manager is responsible for day-to-day administration of the Program, including, by way of example, determining eligibility, amount and duration of all Program benefits.

You may obtain additional information regarding the Program by contacting the Manager, Corporate Displacement Plan, Mellon Bank, N.A., Two Mellon Bank Center, Room 152-1025, Pittsburgh, PA 15259-0001.

**This is both the Program Document and Summary Plan Description(SPD) of the Program. You are receiving this combined Program Document and SPD as required by the Employee Retirement Income Security Act of 1974 (ERISA). Please keep this booklet for your reference.**

# Eligibility and Benefits

## Eligibility Requirements

You are eligible to begin participation if you are a benefited full-time or a benefited part-time employee of either Mellon Financial Corporation ("**Mellon**") or any of its 80% or more owned subsidiary or affiliated companies which has expressly elected to have its eligible employees covered by this Program (each a "**Participating Mellon Company**"). You are eligible to receive benefits (displacement payments and certain benefit coverage) if your employment ceases due to technological change or another business reason not related to individual performance.

An employee is **not eligible** to receive benefits under the Program in the following cases:

- When the employee ceases to be "benefited."

- When the employee voluntarily resigns or accepts another position within Mellon.

- When the employee is covered by a separate agreement (either covering the employee individually or as a result of covering a group of employees which includes the employee) that provides compensation and/or benefits for periods following the employee's termination of employment ("**Separate Agreement**"), except where the Separate Agreement expressly provides that the employee shall remain eligible for benefits under this Program.

- When the employee's employment with a Participating Mellon Company is affected by Mellon's sale of a business or by Mellon's contracting for or otherwise transferring the employee's employment functions to another employer where the terms of the sale, contract or transfer provide for employment of the employee by another employer and Mellon determines (such determination being made in Mellon's sole discretion) that the position to be provided to the affected employee:

  - does not involve a significant change in responsibilities from those assigned to the employee immediately prior to the sale or transfer;

  - unless otherwise provided in the terms of the sale, contract or transfer, is at a location within a 30-mile radius of the employee's location immediately prior to the sale or transfer; or

  - initially provides base salary and incentive compensation opportunities which, in the aggregate, are reasonably similar to those provided by the Participating Mellon Company immediately prior to the sale or transfer.

  For purposes of this exception, "Incentive Compensation" means any bonus, incentive or commission opportunities (regardless of whether based on individual and/or market performance or whether the award is determined by formula or by management discretion); provided, however, that incentive compensation shall not include the value of awards of options to purchase Mellon stock; any special "retention bonuses" established in connection with Mellon's sale of a business or Mellon's contracting for or otherwise

transferring the employee's employment functions to another employer; nor shall it include Premier Achievement or any other miscellaneous forms of additional compensation not specifically included within the terms "bonus" and "commission" as defined by Mellon.

- When the employee declines Mellon's offer of employment in a position within one salary grade below the position from which the employee is being displaced and Mellon determines (such determination being made in Mellon's sole discretion) that the lower salary grade position offered:

    - does not involve a significant change in responsibility;

    - does not require transferring to a location beyond a 30-mile radius of the employee's location immediately prior to the displacement; provided, however, that Mellon, in its sole discretion, may expand or contract the 30-mile guideline to take into account the presence or absence of public transportation or infrastructure impediments which positively or negatively affect employee commuting burdens;

    - does not impose an unreasonable change in hours of work;

    - with respect to employees whose prior position included incentive opportunities, would not involve more than a 15% reduction in the total cash compensation opportunities initially available to the employee; and

    - is otherwise consistent with the employee's skills, training and work experience.

- Effective on and after January 12, 1996, when the employee voluntarily elects to participate in a voluntary early retirement incentive program providing retiree medical and/or enhanced retirement benefits and the value of the retiree medical and/or enhanced retirement benefits equal or exceed the displacement pay that would otherwise be provided under this Program.

- When the employee has been receiving Short or Long-Term Disability, or Workers' Compensation payments for a period of six months or more (see Disability/Workers' Compensation on page 14).

## Notification of Eligibility

Eligible employees will be notified in writing of their official displacement date, the amount of displacement pay to which they are entitled, payment options, benefit coverage continuation and career transition assistance availability. Such written communication constitutes formal notification under the Program and will be given two weeks in advance of the official displacement date if business needs, as determined by Mellon in its sole discretion, permit. Oral communications or written estimates of possible benefits do not constitute formal notification under this Program. Mellon, in its discretion, may provide two week's pay in lieu of notice.

*Note: Mellon complies with any applicable legislation requiring employers to give notification of layoffs, site closings, force reductions, etc., in accordance with such legislation.*

## Displacement Pay Components

### Basic Displacement Pay

Displaced employees who meet the eligibility requirements of the Program will receive basic displacement pay equal to two weeks of "base salary" (defined below) for each full and/or partial year of "continuous service" (defined under Continuous Service on page 5) with a Participating Mellon Company immediately prior to their official displacement date, up to a maximum amount equal to one year's base salary.

### Extended Displacement Pay

Extended displacement payments based on the following criteria will be made to eligible displaced employees who elected the salary continuance payment option **and have not commenced other employment** prior to the exhaustion of their weeks of basic displacement pay:

- 4 weeks' base salary for employees in non-exempt salary grades B through E and non-exempt employees not on a corporate salary grade structure;

- 8 weeks' base salary, for employees in non-exempt salary grades F and above and exempt salary grades 2 through 6 and exempt employees who are not on the corporate salary grade structure and whose annual base salary is $45,000 or less; and

- 12 weeks' base salary, for employees in exempt salary grade 7 and above and exempt employees who are not on the corporate salary grade structure and whose annual base salary exceeds $45,000.

### Maximum Total Displacement Pay

Total displacement pay (basic displacement pay and extended displacement pay) will not exceed one year's base salary. All displacement payments will be treated as taxable compensation and shall be subject to all applicable federal, state and local taxes and withholding requirements.

### Base Salary

As calculated for purposes of this Program "base salary" means the employee's **annual** base salary, wage or "benefits base" rate (for employees on commission plans) exclusive of all special adjustments or increments such as shift differentials, over-time, incentive compensation and the cash value of any and all non cash benefits as in effect immediately prior to his/her displacement date payable in 24 equal amounts over Mellon's regular semi-monthly payroll periods.



# Continuous Service

## General Rule

As calculated for purposes of this Program "continuous service" begins on the date the employee first performs an hour of compensable work (the employee's "**anniversary date**") as a benefited full-time or a benefited part-time employee for a Participating Mellon Company and ends on the earliest to occur of the employee's ceasing to be benefited, quit, retirement, displacement, discharge, death or other termination of employment (referred to as a "**break in service**"). Hours of compensable work performed by an employee prior to becoming a benefited full-time or a benefited part-time employee are not counted as "continuous service."

## Full Years

All eligible employees with less than 12 months of continuous service (measured from each employee's anniversary date) are treated as having one year of continuous service for purposes of determining their benefits under the Program. Employees with 12 or more months of continuous service shall have their period of continuous service under the Program rounded up to the next full year.

## Bridging Service

Except as otherwise provided in the following sentence, former employees who are rehired (or become benefited) following their earlier break in service shall lose all prior periods of continuous service and shall be treated as a new employee. Effective on and after January 1, 1999, rehired employees (or those who resume benefited status) whose break in service occurred after January 1, 1993 and who are rehired (resume benefited status) less than one year from the date of their earlier break in service shall have their prior period(s) of continuous service restored and shall be treated as if the period of their break in service was continuous service (referred to as "service spanning"). In other words, employees described in the preceding sentence who leave a Participating Mellon Company (or cease to be benefited) and return (or resume benefited status) in less than one year are treated as if they never left under this Program.

## Service with Prior Employer

Where a person becomes a Mellon employee as a result of Mellon's acquisition of person's prior employer, through merger, a stock or asset acquisition, or otherwise, such person's service with the prior employer before it became part of Mellon will **not** automatically be treated as continuous service for purposes of determining the person's future benefits, if any, under the Program. Rather, unless there is express language in the governing merger/acquisition agreement, or in the related documentation implementing the benefits portion of the acquisition, providing for the crediting of prior service for purposes of calculating displacement/severance benefits, service with an employer prior to becoming part of Mellon is **not** counted.

Mellon Financial Corporation Displacement Program
*Summary Plan Description*
*July 2002*

Notwithstanding this general rule that service with a prior employer is not counted, if a person is employed either by these banks which, after their acquisition by Mellon were commonly referred to as Mellon (North), Mellon (Northeast), Mellon (Central), Mellon (Commonwealth) or Mellon (Girard) or by these entities which after their acquisition by Mellon, were commonly referred to as Meritor I or PSFS, then the employee's service with any of these prior employers as a "benefited" (or equivalent status) employee will be taken into account for purposes of determining continuous service under this Program as well as for purposes of determining years of service for vacation entitlement and Short Term Disability eligibility.

## Displacement Payment Method

Employees must elect to receive displacement payments in the form of either a single lump-sum payment or salary continuance payments. Employees who elect to receive displacement payments in the form of salary continuance payments may be eligible to receive such payments under the Mellon Financial Corporation Supplemental Unemployment Benefit (SUB) Program, as further described below.

### Lump-Sum Payment

The employee receives only basic displacement pay in one lump-sum payment. The employee receives no extended displacement pay. The employee is terminated as of the official displacement date and all benefit coverage ceases on that date. The lump-sum payment will be made within 30 days of the election.

Solely for purposes of calculating the dollar amount of a lump-sum payment, the employee's annual base salary (defined on page 4 under Base Salary) otherwise payable over 24 semi-monthly payroll periods shall be converted into a weekly base salary amount by **dividing the annual base salary by 52**. The weekly amount thus determined will be multiplied by the number of weeks of basic displacement pay to determine the lump-sum payment. Due to this conversion, a lump-sum payment of basic displacement pay will not necessarily equal the aggregate dollar amount of the same number of weeks of basic displacement payable in the form of salary continuance (described below).

### Salary Continuance

The employee receives basic displacement pay in periodic installments of base salary on regular pay days. If the employee becomes eligible for extended displacement pay, that is also paid in periodic installments on regular paydays. The initial and/or final salary continuation payment will be pro-rated where the number of weeks of basic and extended salary continuance to which the employee is entitled does not correspond exactly to the start and/or end dates of the related regular payroll periods.

Benefit coverage continues as discussed below while the employee is receiving salary continuance. If and when the employee commences other new employment, the periodic installments cease and, except with respect to re-employment by Mellon, the unpaid balance, if any, of basic displacement pay is paid in a lump sum. No lump-sum payment of unused extended

displacement pay is made. No lump-sum payments of unused basic or extended displacement pay is made with respect to displaced employees rehired by Mellon.

**Supplemental Unemployment Benefit Payments**

An employee who elects to receive salary continuance payments may be eligible to receive these payments under the SUB Program. Under the SUB Program, salary continuance payments are made on a "pre-tax" basis (note that an employee may receive salary continuance payments and benefits under either this Displacement Program or under the SUB Program, but not under both). This means that an employee would pay no Social Security taxes, unemployment taxes, and in some states, state income taxes on the salary continuance payments.

*Who is Eligible for SUB Payments:* Generally, an employee who is available for work, who has not commenced new employment and who is eligible to receive state unemployment benefits will be eligible to receive salary continuance payments under the SUB Program instead of payments under this Displacement Program. Further, in certain circumstances, an employee may be eligible to receive SUB Program payments even if the employee is not eligible for state unemployment benefits. For example, an employee who is not eligible to receive state unemployment benefits for any of the following reasons may nevertheless be eligible for SUB Program payments:

- The employee has not satisfied an applicable waiting period for state unemployment compensation benefits;

- The employee did not earn enough to qualify for state unemployment compensation benefits;

- The employee has exhausted state unemployment benefits; or

- The employee chose not to apply for unemployment benefits despite being eligible for such benefits.

However, the specific eligibility requirements for and the specific provisions regarding the payment of salary continuance payments under the SUB Program in substitution for salary continuance payments under this Displacement Program are described in the separate SPD for the SUB Program.

## Notification of Employment

**Displaced employees receiving salary continuance payments must notify the Program Manager as soon as possible, but in no event later than three work days, of their beginning "new" employment with another employer. Except with respect to re-employment by Mellon, such notification will not affect the displaced employees' right to receive any unpaid installments of basic displacement pay in one lump sum. However, failure to promptly notify the Program Manager of the start of other employment may cause the displaced employee to erroneously receive excess extended displacement payments and/or benefits which will have to be repaid to Mellon.**

As noted above, no lump-sum payments of unpaid installments of basic or extended displacement pay are made with respect to displaced employees re-hired by Mellon.

For purposes of this Displacement Program, "new" employment means full or part-time employment which commences after the employees receipt of their official notification of their Displacement Date.

## Correction of Errors

The Program Manager strives to operate the Program as accurately as possible. Occasionally, however, errors in determining initial eligibility and/or calculation of displacement pay and benefits will occur. In such situations, Mellon expressly reserves the right to correct any and all errors; including, by way of example, the right to demand repayment of any excess displacement payments erroneously made to a displaced employee due to miscalculations of base salary as well as the authority to adjust the number of weeks of basic and/or extended displacement pay being provided to a displaced employee to correct miscalculations of continuous service. Any past failure to detect and/or correct any error in the operation of the Program shall not prevent or otherwise restrict the Program Manager from correcting any future error.

## Temporary Assignments

Displaced employees with a fully satisfactory "On Target" rating or better or with a "Too New to Rate" Performance Appraisal rating who opt for salary continuance may be offered temporary assignments within Mellon; provided that any such temporary assignment is for the same base salary and hours of work as the job from which the employee is being displaced. Salary continuance is suspended when a displaced employee begins such a temporary assignment. Base salary is paid and employee benefit coverage is continued, with the exception of vacation accrual, while the employee is performing the temporary assignment. Declining or terminating such a temporary assignment will not result in loss of eligibility for displacement pay or continuation of certain employee benefit coverages.

A "**temporary assignment**" is one of at least two weeks but not more than six months. Regardless of the duration of any separate temporary assignment, in no event may the aggregate of separate periods of temporary assignment offered to displaced employees exceed six months.

Although time spent on temporary assignment is not treated as continuous service (see Continuous Service on page 5), neither does it reduce previously earned but unpaid salary continuance payments. Accordingly, effective as of the conclusion of their temporary assignment, employees will be provided with a notice of the resumption of their remaining salary continuance payments and their revised displacement end date.

Except as may be required by the Bridging of Service rules (see Bridging Service on page 5) with respect to displaced employees who are rehired following a temporary assignment, time worked in a temporary assignment will **not** be treated as continuous service for purposes of determining the basic displacement pay to which the employee is entitled under this Program.

## Career Transition Assistance

Career transition assistance is offered to displaced employees.

The type and scope of the career transition assistance program, as well as the provider of any such career transition assistance, will be determined by the Program Manager, in the Manager's sole discretion, at the time of any particular employee's displacement. Regardless of the type and scope of career transition assistance provided, however, in no event shall Mellon provide or be responsible for any costs or expenses incurred by the employee in the employee's search for new employment; including, but not limited to, travel, lodging and meal expenses.

All contact with career transition providers will be made through the Program Manager. Employees may elect not to participate in the career transition assistance which is offered. However, payment of career transition fees to employees in lieu of career transition services is not permitted.

## Career Opportunities Program

Displaced employees are eligible to apply for positions posted in the Career Opportunities Program while they are receiving salary continuance, provided they meet the posting requirements of the Career Opportunities Program.

## Offset of Benefits by Incentive Benefits

Like most displacement benefit plans, the benefits provided under the Program are intended to help displaced employees "bridge the gap" between periods of employment or retirement income. Special early retirement incentive programs offering retiree medical benefits and/or enhanced retirement benefits during a limited election or "window" period ("Incentive Benefits") are also designed to bridge this same gap.

Because of this overlap, effective on and after January 12, 1996 and subject to any contrary legal requirements where a displaced employee is eligible to receive (or is receiving) benefits under the Program and voluntarily elects to receive an Incentive Benefit provided by a Participating Mellon Company ("Mellon Incentive Benefits"), the displacement pay to which the displaced employee would otherwise have been entitled under the Program, but for the election of the Mellon Incentive Benefits, will be offset by the value of the Mellon Incentive Benefits.

With respect to any displaced employee who was already receiving salary continuation payments under the Program at the time of an election to take the Mellon Incentive Benefits, the offset would only apply to salary continuation benefits, if any, which would otherwise become payable after the effective date of the election of the Mellon Incentive Benefit.

Mellon Financial Corporation Displacement Program
*Summary Plan Description*
*July 2002*

Where the value of the Mellon Incentive Benefit fully offsets the displacement pay which would otherwise be provided under the Program, the displaced employee will be considered to have terminated employment as of the effective date of the Mellon Incentive Benefits and the displaced employee would not be entitled to continued benefit coverage or any other Program benefit.

The offset would not apply to displaced employees who do not elect a Mellon Incentive Benefit.

# Salary Administration

## Employment Status

Displaced employees electing the lump-sum payment option shall have their employment with Mellon terminated for all purposes effective as of their official displacement date. Except as otherwise provided in any Separate Agreement (defined on page 2), displaced employees electing salary continuance shall be described, for payroll purposes, as "terminated with pay" but shall continue to be treated as a Mellon employee, solely for purposes of the various benefit coverages provided under the Program, until the date which is the earlier of: the date they commence employment with a new employer; or the last day for which the employee is entitled to salary continuance payments from the Program. On or after such termination date, the displaced employee shall be entitled to elect those benefits, if any, provided to terminated Mellon employees.

Except as otherwise provided in this Program document, in the document or policy setting forth the terms and conditions of any particular employee benefit or in any Separate Agreement (defined on page 2), displaced employees shall be treated as active employees with respect to any pension, welfare, fringe or other employee benefit provided to the displaced employee receiving salary continuance payments under this Program without regard to whether such displaced employee is performing any services for Mellon.

## Merit Increases

Employees who are displaced are not eligible to receive a merit increase with an effective date subsequent to their official displacement date.

## Temporary Assignments

While on temporary assignments, employees do not receive merit or promotion increases. If an employee on temporary assignment subsequently accepts a job within Mellon, time worked in a temporary assignment will be used in determining the timing of the next merit increase; such increases are not retroactive.

## Lower Salary Grade Jobs

The Salaries ("**Prior Salaries**") of displaced employees who accept jobs with a lower salary grade than the salary grade of the position from which they were displaced will be reduced to the maximum salary for the new job if their Prior Salary was more than the maximum of the salary range of the new job. If a salary reduction is to occur, the employee will be notified when the job is offered and the reduction will become effective as soon as possible but in no event later than the end of the six-month period following the start of the new job.

Mellon Financial Corporation Displacement Program
*Summary Plan Description*
*July 2002*

## Re-Employment

Displaced employees who apply for re-employment by Mellon after they have received a lump-sum payment of basic displacement pay will only be offered employment if they agree to repay the portion of the lump sum (if any) that represents the number of weeks of earned displacement pay that is greater than the number of weeks between their official displacement date and the effective date of re-employment.

Whether or not rehired former employees shall be recredited with their period(s) of prior continuous service for purposes of this Program shall be determined in accordance with the general rules set forth in the earlier section of this Program document entitled Continuous Service on page 5. Former employees who are rehired at any location under circumstances that entitle them to have their prior continuous service restored and their period of absence treated as continuous service under the service spanning rule will receive similar service credit for purposes of determining their subsequent annual vacation entitlement and Short-Term Disability eligibility.

Displaced employees who are re-employed in the same calendar plan year must enroll in the same Flexible Benefits Program options in which they were enrolled when they were displaced. If they are re-employed in a subsequent calendar plan year, they will be treated as newly hired employees and will be eligible to select new benefits options.

## Death

The estate of an employee who dies while receiving basic displacement pay in periodic installments shall be paid the unpaid balance, if any, of the deceased's employee's basic displacement pay benefit in one lump-sum payment.



# Benefits

## Mellon Flexible Benefits Program

Participation in certain of the benefits offered through the Mellon Flexible Benefits Program will continue while the employee is receiving salary continuance. Mellon reserves the right to add to or subtract from the continued benefits from time to time and at any time. The benefits to be continued with respect to any particular displaced employee will be described in the official notification letter provided to the employee. At the time this document was drafted, the following benefits were to be continued to employees receiving salary continuance: medical, dental, life insurance and health and dependent care funds.

## Mellon 401(k) Retirement Savings Plan (401(k) Plan)

Employees who elect salary continuance will continue to be eligible to participate in the 401(k) Plan.

## Mellon Bank Retirement Plan

Employees who elect salary continuance will continue to receive credit for vesting purposes and benefit calculation in the Mellon Bank Retirement Plan while receiving such payments.

## COBRA

Effective as of their termination date described in the section entitled Employment Status on page 11, employees covered by a Mellon group health plan may elect to have such coverage continued under a federal law commonly referred to as "COBRA". Under COBRA, employees are eligible to elect to continue their Mellon medical plan and dental plan coverage for up to 18 months. A spouse or dependent child of an employee who loses coverage under the Mellon medical or dental plan may be eligible to continue coverage for up to 36 months.

## Life Insurance

Effective as of their termination date described in the section entitled Employment Status on page 11, employees covered by a Mellon group term life insurance plan may elect to convert such coverage into an individually owned policy.

*For more information regarding COBRA continuation coverage or the right to elect individual life insurance, please refer to the COBRA and conversion rights sections in the Mellon Health Program and Life Insurance Plan SPDs or contact the Human Resources Customer Service Center at 1 800 947-HR4U.*

## Disability/Workers' Compensation

Employees will not be displaced while receiving Short or Long-Term Disability payments or workers' compensation payments. If such employees are able to return to work within six months of the commencement of their absence, but their jobs were eliminated during their absence, they will be notified of their displacement on the date they would have returned to work and shall be provided with such Program benefits, if any, to which similarly situated employees who were not on Short or Long-Term Disability or receiving workers' compensation would be entitled on the same displacement date. If such employees' absence due to Short or Long-Term Disability or Workers' Compensation exceeds six months, they are not eligible to receive any benefits under the Program.

After their official displacement date, employees are not eligible for Short or Long-Term Disability benefits.

## Relocation and Tuition Assistance

All relocation allowances which are in effect on the official displacement date will remain in effect while the employee receives salary continuance. Domestic relocatees will not be relocated unless Mellon assigns them to a job in another location. U.S. employees displaced from a position in another country will be relocated back to their point of origin if they choose to relocate within 60 days of their official displacement date. Tuition reimbursements with respect to tuition assistance approved and classes registered prior to the official displacement date will be paid only in those situations where the request for reimbursement was submitted on or before the cut-off date for the preparation of the employee's final salary continuance payment.

## Vacation

An employee's annual vacation entitlement is based on years of continuous service. The annual vacation entitlement, in turn, is spread evenly over the entire calendar year so that, in effect, $1/12^{th}$ of the annual entitlement is earned each month. Employees are not permitted to earn any portion of their annual vacation entitlement (nor purchase any additional vacation days under the Flexible Benefits Program) after their official displacement date nor while they are working in any temporary assignments. Vacation earned (or purchased under the Flexible Benefits Program) but unused in the calendar year of displacement is paid to displaced employees as soon as possible following their displacement. **To the extent a displaced employee has used more vacation days than were earned through the employee's displacement date, the employee's basic displacement pay (paid in a lump sum or in the initial salary continuance payment, as applicable) will be reduced by an amount equal to the value of the unearned vacation.**



For example, an employee with an annual vacation entitlement of 4 weeks leaves on July 1. The employee has "earned" 2 of the 4 weeks. If the employee had taken less than 2 weeks, he/she would be paid the earned but unused amount. If the employee had taken more than 2 weeks, the days taken in excess of 2 weeks would be deducted from his/her basic displacement pay. Finally, if this same employee is rehired under circumstances which would entitle his/her continuous service to be bridged (see Continuous Service on page 5), he/she would commence to "earn" his/her annual pre-break entitlement of 4 weeks in monthly increments of 1/12th over the remainder of the calendar year in which the employee was displaced.

## Personal Leave of Absence

If an employee is on an approved personal leave of less than six months' duration on their official displacement date, the leave is canceled and their displacement is immediately effective.

## Club Memberships

Club memberships may be maintained for a period of up to 60 days beyond the official displacement date. No expenses other than dues will be paid during that 60-day period.

After the 60-day period further eligibility to continue the memberships will be determined by Mellon.

## *ShareSuccess* Plan

Vested options must be exercised prior to the date your employment with Mellon is terminated (see Employment Status on page 11). Displaced employees electing salary continuance will continue to receive credit for vesting purposes under the *ShareSuccess* Plan while receiving such payments and may exercise vested options through the end of the salary continuance period, through the date a lump-sum payment is made, or through the date employment is terminated, whichever occurs first.

## Employee Stock Purchase Plan (ESPP)

Participation in the ESPP is available only to active employees. Displaced employees cease to be treated as an active employee for the ESPP as of their official displacement date. Accordingly, participation in the ESPP ends as of the official displacement date and displaced employees will not be permitted to purchase any additional shares through the ESPP. Any contributions made during the purchase period prior to the displacement date will be returned without interest. Stock purchased in previous periods may be left in the displaced employee's ESPP account or may be sold through Mellon Investor Services.

## Profit Bonus Plan, Restricted Stock Grants, Stock Options and Other Incentive Plans

Participation in these programs is in accordance with the terms and conditions of the applicable plans.

## Automobile

Employees who had full-time use of a company-owned automobile must return the automobile to Fleet Administration on or before the official displacement date.

## Additional Information

For additional information regarding how displacement affects your benefits under any Mellon program, call 1 800 947-HR4U . Customer Service Representatives are available from 8:30 AM to 5:00 PM, Eastern Standard Time, Monday-Friday.



# Amendment or Termination of The Program

While Mellon has no present intention to terminate the Program, it has expressly retained the right to amend, modify or terminate the Program at any time; with such powers to amend, modify or terminate being exercisable by the Program Administrator. Notwithstanding the preceding sentence or applicable law, effective on and after December 15, 1998 no amendment or modification (including, but not limited to, an act of terminating or eliminating Program provisions) made to the Program by Mellon or the Program Administrator which reduces either (a) the benefits provided by the Program or (b) the circumstances in which such benefits shall be provided shall be effective with respect to any displacement occurring after any "Change in Control Event," as such term is defined in the Mellon Bank Retirement Plan, and within the three years following such Event unless such amendment or modification was adopted by Mellon or the Program Administrator at least 12 months prior to the Change in Control Event (the "12-Month Waiting Period"); *provided, however,* that Mellon expressly reserves to itself and the Program Administrator the right to amend and modify (including, but not limited to, an act of terminating or eliminating Program provisions) the provisions of the Program subject only to the satisfaction of such 12-Month Waiting Period.

Employees eligible to receive benefits under the Program will be notified of any material modifications to the Program.

## Effect of Conflicting Provisions

This Program document, together with any subsequent amendments adopted by Mellon or the Program Administrator, sets forth all the terms and conditions governing the provision of displacement benefits to eligible employees. In the event that the terms of any written or oral description of Program benefits conflicts with the terms of this Program document, the terms of this Program document shall control.

Mellon Financial Corporation Displacement Program
*Summary Plan Description*
*July 2002*

# Unemployment Compensation

Receipt of benefits under the Program may affect your eligibility to receive any unemployment compensation benefits provided by your state of residence. Each state has its own rules and regulations and your eligibility for unemployment compensation benefits will be determined by your home state. If you have questions, you are encouraged to contact your local state unemployment office.

However, receipt of salary continuance payments under the SUB Program may not adversely affect your eligibility to receive unemployment compensation benefits in many states. Again, refer to the SUB Program SPD for details on whether you are eligible to and how to participate in the SUB Program.



# Claim and Appeal Procedures

A request for benefits must be presented in writing to the Program Manager. If the request is wholly or partially denied, you will be advised in writing within 90 days after receipt of the claim by the Program Manager (unless special circumstances require an extension of time) of the specific reason for the denial. If you disagree with the decision on your request for benefits, you may request that the decision be reviewed by the Program Administrator. Any such appeal must be made in writing to the Program Administrator within 60 days after receiving the written denial from the Program Manager and must include the basis upon which the review is requested, including, but not limited to, pertinent Program provisions, prior decisions, and/or statement of facts or circumstances in your possession which are pertinent to your request for benefits.

The Program Administrator will conduct a full and fair review of the claim and render a written decision to the claimant within 60 days after the receipt of the written appeal (unless special circumstances require an extension of time). The decision on appeal will contain the specific reason on which the decision is based. The decision of the Program Administrator shall be final. If you fail to appeal any denial of a request for benefits in the manner and within the deadlines specified above, you waive your right to request a review of the Program Manager's decision and you are barred from again making the same request for benefits.

# Additional Facts About The Plan

**Name of Plan**

Mellon Financial Corporation Displacement Program

**Name of Employer**

Mellon Financial Corporation
One Mellon Bank Center
Pittsburgh, PA 15258

**Employer Identification Number**

25-1233834

**Program Manager**

Manager, Corporate Displacement Plan
Mellon Financial Corporation
Two Mellon Bank Center
Room 152-1025
Pittsburgh, PA 15259-0001

**Program Administrator**

The Program Administrator is:

The Human Resources Department
Mellon Financial Corporation
One Mellon Bank Center
Pittsburgh, PA 15258

**Agent for Service of Legal Process**

Department Head
Human Resources Department
Mellon Financial Corporation
One Mellon Bank Center
Pittsburgh, PA 15258



**Plan Number**

501

**Plan Year**

January 1 to December 31

**Type of Plan**

Welfare benefit plan

**Plan Financing**

Unfunded; paid out of general assets of employer

# ERISA Rights Statement

Government regulations require that all SPDs include the statement shown below. The statement was drafted by the government.

As a participant in the Program, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all program participants shall be entitled to:

- Examine, without charge, at the Program Administrator's office and at other specified locations, such as work sites, all Program documents, and copies of all documents filed by the program with the U.S. Department of Labor.

- Obtain copies of all program documents and other program information upon written request to the Program Administrator. The administrator may make a reasonable charge for the copies.

In addition to creating rights for program participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit program. The people who operate your program, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other program participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA. If your claim for a benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Program review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Program and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Program Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a request for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that program fiduciaries misuse the program's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees.

If you are successful, the court may order the person you have sued to pay these costs and fees; if you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your Program, you should contact the Program Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor Management Services Administration, Department of Labor. You may also contact the Human Resources specialist at your site or Benefits in Pittsburgh.

EXHIBIT D

Paul R. Rooney (PR-0333)
REED SMITH LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5400

Attorneys for Defendant
Mellon Financial Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

RAYMOND VAN COTT                        :        07 Civ. 5578 (MGC) (RLE)
                                        :
              Plaintiff,                :        ECF FILED
      - against -                       :
                                        :
MELLON FINANCIAL CORPORATION            :
                                        :
              Defendant.                :
-------------------------------------------------------X

## DEFENDANT MELLON FINANCIAL CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Dated: June 18, 2007
      New York, New York

for enhanced severance benefits, a.k.a. Transition Package. Complaint at ¶ 15.[1] The benefit

consisted of the payment for outplacement services and fifty-two weeks of severance pay.

Although stated apparently in generous terms, the enhanced benefits were to be reduced by those

already provided under the Displacement Program. To be eligible for Displacement Program

benefits and, if notified, the enhanced severance pay, one had to be found to be "displaced"

under the Displacement Program in accordance with its terms and administrative procedures.

Complaint at ¶ 17(c).

Both ordinary severance pay and enhanced severance pay under the Displacement

Program is an *unfunded* benefit. This means that, if the Displacement Program found that

benefits were payable, Mellon Financial Corporation was required to pay them. Mellon

Financial Corporation is bound by Displacement Program's determination regarding benefit

entitlement. Alternatively, if the Displacement Program finds that benefits are not payable,

Mellon Financial Corporation may not pay them.

Plaintiff, quoting the Displacement Program[2] in his Complaint, claims that he met

its definition of "displaced" due to a "significant change in responsibilities from those assigned

to [plaintiff] immediately prior to the sale or transfer." Complaint at ¶ 30.

---

[1]    Plaintiff's Complaint refers to and purports to attach a "Special Retention Agreement."
No such document is attached. This is because there is no agreement. Rather, there is
notice that he was potentially eligible, inter alia, for the enhanced severance benefits he
seeks in this case. A copy of the December 2004 Notice is found at Attachment 3 to the
Affidavit of Audrey F. Bonnett.

[2]    A copy of the Displacement Program may be found as Attachment 1 to the Affidavit of
Audrey Bonnett, filed with the present motion. To decide a Rule 12(b)(6) motion, the
court may generally consider exhibits attached to the complaint and authentic documents
submitted by the defendant upon which plaintiff's complaint is premised, in addition to
the allegations asserted therein. *Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994); accord
*In Re Donald J. Trump Casino Securities Lit.-Taj Mahal Lit.*, 7 F.3d 357, 368 n.9 (3d Cir.
1993) (holding district court properly considered prospectus appended to motion to
dismiss by defendants, where plaintiffs' claims were based upon the document and
plaintiffs failed to attach the document to their complaint), *cert. denied sub nom Gollomp
v. Trump*, 510 U.S. 1178 (1994).

- 2 -