Himmel & Bernstein, LLP
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY 10010
(212) 631-0200
Attorney of Record:
    Tracey S. Bernstein, Esq. (TB-0405)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RAYMOND VAN COTT,

                Plaintiff,

    -against-                                    2007 Civ. 5578 (MGC)(RLE)

MELLON FINANCIAL CORPORATION,

                                                          ECF FILED

                Defendant.
------------------------------------------------------------------x

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO REMAND

HIMMEL & BERNSTEIN, LLP
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY  10010
(212) 631-0200

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS............................................................................................ ii

TABLE OF AUTHORITIES....................................................................................... iii

PRELIMINARY STATEMENT.................................................................................. 1

STATEMENT OF FACTS......................................................................................... 2

ARGUMENT............................................................................................................. 3

    I.   REMAND IS WARRANTED AS THIS COURT LACKS SUBJECT
        MATTER JURISDICTION................................................................................ 3

        A.  The Retention Agreement is a Separate & Distinct Agreement
            Unrelated to the Mellon Displacement Program.................................... 4

        B.  The Retention Agreement is Not a "Plan" Under ERISA......................... 6

    II.  PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY'S FEES................... 10

CONCLUSION........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992)......................................8

*Crews v Gen. Am. Life Ins. Co.*, 274 F.3d 502 (8th Cir. 2001)................................6

*Eide v. Grey Fox Technical Services Corporation*, 329
    F.3d 600 (8th Cir. 2003)....................................................................6

*Fludgate v. Mngt. Tech., Inc.*, 885 F. Supp. 645 (S.D.N.Y. 1995)............................6

*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S. Ct. 2211 (1987)..........7, 8

*Hijeck v. United Technologies Corp*, 24 F. Supp.2d 243 (Conn. 1998).....................8

*James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463 (2d Cir. 1993)...............8

*Patel v. Sugen, Inc.*, 354 F.Supp.2d 1098 (N.D.CA 2005)..................................4, 5

*Plante v. Foster, Klima & Company, LLC*, 2004 U.S. Dist.
    LEXIS 19725 (D.Minn).....................................................................8

*Schonholtz v. Long Island Jewish Med. Ctr.*, 87 F. 3d 71 (2d Cir. 1996)..................8

*Sheer v. Israel Discount Bank of New York*, 2007 U.S. Dist. LEXIS
    16488 (S.D.N.Y).......................................................................3, 8, 9

*Taverna v. Credit Suisse First Boston (USA), Inc.*, 2003 U.S. Dist.
    LEXIS 1607 (S.D.N.Y.)..............................................................8, 9, 10

*Tishman v. ITT/Sheraton Corporation*, 145 F.3d 561 (2d Cir. 1998).....................7, 8

*Wigell v. Nappi*, 485 F.Supp.2d 142 (N.D.N.Y. 2007)...............................4, 5, 6, 7

**Statutes**

28 U.S.C. §1331..................................................................................3

28 U.S.C. §1441(a)........................................................................1, 3, 10

28 U.S.C. § 1447(c)...........................................................................1

ERISA, 29 U.S.C. § 1001 *et seq.*, as amended (1988)........................................1

ERISA, §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)............................................1, 3

ERISA §514, 29 U.S.C. §1144..................................................................1

## **PRELIMINARY STATEMENT**

This memorandum of law is submitted by plaintiff Raymond Van Cott ("Mr. Van Cott" or "plaintiff") in support of plaintiff's motion pursuant 28 U.S.C. §1447(c) to remand this matter to New York State Supreme Court, New York County as the federal court lacks subject matter jurisdiction over the dispute.

On May 1, 2007, Mr. Van Cott initiated a breach of contract claim against Mellon Financial Corporation ("Mellon" or "defendant") in New York State Supreme Court, New York County ("State Court"), to recover "Transition Pay" equal to 52 weeks of his salary under the terms of a "Confidential Special Retention Package", dated December 3, 2004, provided to him by Mellon (the "Retention Agreement"). (A copy of the New York State Summons & Complaint is annexed to the Affidavit in Support of Tracey S. Bernstein, Esq. ("TB Aff.") as Exhibit A; a copy of the Retention Agreement is annexed as Exhibit B to the TB Aff.)

On June 11, 2007, Mellon improperly removed the State Court action to the Southern District of New York on the ground that plaintiff's breach of contract claim seeking payment of severance under the terms of the Retention Agreement is pre-empted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.*, as amended ("ERISA"). ERISA §502(a)(1)(B), 29 U.S.C. §1131(a)(1)(B), §514, 29 U.S.C. §1144.[1] (A copy of defendant's Removal Petition is annexed as Exhibit A to the TB Aff.; a copy of the Displacement Program Summary Plan Description is annexed as Exhibit C to the TB Aff.)

For the reasons set forth below, the court lacks subject matter jurisdiction over this matter. Plaintiff's Complaint seeks only to recover benefits under a common law claim of breach of contract based on the Retention Agreement given to him by Mellon in order to retain his services while it attempted to sell the business unit to which he was assigned to a third party. (Exhibits A and B.) Accordingly, this matter should be remanded back to State Court for further proceedings.

---

[1] Defendant premised its right to removal solely on Federal question jurisdiction. 28 U.S.C. §1331.

1

## STATEMENT OF FACTS

Mr. Van Cott began employment with Mellon in our about July 1998. (TB Aff., Complaint ¶ 7.) He was steadily promoted, receiving progresslively greater responsibilities, until he attained his final position of Senior Vice President and Sector Chief Information Officer for Mellon's Human Resources & Investor Solutions Division ("HR&IS"). (TB Aff., Complaint ¶¶ 9 – 13, 20 - 21.) In Fall 2004 Mellon began negotiating to sell HR&IS to a third party and offered Mr. Van Cott the Retention Agreement.[2] (TB Aff., Complaint ¶¶ 14 – 15; Exhibit B.) The purpose of the Retention Agreement was to guarantee certain monetary payments in order to secure Mr. Van Cott's services and keep him from leaving Mellon's employ while Mellon pursued the sale of HR&IS. (TB Aff., Complaint ¶ ¶ 15 – 16; Exhibit B.) The Retention Agreement was not offered to all employees of Mellon, or even all employees of HR&IS, but only to plaintiff and, allegedly, a few select key executives who were essential to the deal. (TB Aff., Complaint ¶ 16; Exhibit B.)

Under the terms of the Retention Agreement, if Mr. Van Cott stayed through the sale of HS&IS he would be entitled to receive a "Retention Bonus Award" of $300,000, a Supplemental Retention Bonus Award of zero to six (6) months of salary as determined by his supervisor, and a "Transition Package" consisting of "Transition Pay" of 52 weeks of salary and executive level out-placement assistance. (TB Aff., Exhibit B.)

Mr. Van Cott performed his obligations by staying with Mellon, and not seeking new employment, through the sale of HS&IS to Affiliated Computer Services ("ACS") on May 25, 2005. (TB Aff., Complaint ¶ 24.) Mellon then partially performed its obligations under the Retention Agreement by paying Mr. Van Cott his "Retention Bonus Award" of $300,000. (TB Aff., Exhibit B.) (TB Aff., Complaint ¶ 32.) However, Mellon denied Mr. Van Cott his Supplemental Bonus and has refused to pay him the "Transition Pay" called for under the terms

---

[2] Plaintiff inadvertently failed to annex the Retention Agreement to his complaint although he referenced it therein. (TB Aff., Exhibit A.)

of the Retention Agreement even though Mr. Van Cott was "Displaced" as his new position at ACS involved a significant change in responsibilities from those assigned to him just prior to the transfer. (TB Aff., Complaint ¶¶ 21 – 33; Exhibit B.)

Mellon is a signatory to the Retention Agreement and has conceded in its memorandum of law in support of its motion to dismiss that it is the "payer of the benefit." (A copy of the relevant pages from Defendant's Memorandum of Law in Support of its Motion to Dismiss is annexed to the TSB Aff. as Exhibit D.) Yet, Mellon wishes to complicate this matter by attempting to turn a simple breach of contract action for the payment of monies due under a Retention Agreement into an ERISA covered benefit.

## ARGUMENT

**I. REMAND IS WARRANTED AS THIS COURT LACKS SUBJECT MATTER JURISDICTION**

A defendant may remove from State Court to Federal Court a civil action "of which the district courts have original jurisdiction founded on a claim or right arising under the constitution, treaties or laws of the United States . . . ." 28 U.S.C. §1441(a). If the removal was improper, the plaintiff may move to remand the matter back to State court at anytime prior to the entry of a final judgment where the federal court lacks subject matter jurisdiction. 28 U.S.C. §1447(c). Where a motion for remand is made by the plaintiff, it is the defendant who bears the burden of establishing that removal was appropriate. Sheer v. Israel Discount Bank of New York, 2007 U.S. Dist. LEXIS 16488 (S.D.N.Y 2007).

Defendant removed this case from State Court on the ground that plaintiff's breach of contract claim seeking payment of severance under the terms of a Retention Agreement is pre-empted by ERISA as, according to defendant, plaintiff is seeking to recover benefits under an "employee welfare benefit plan." 29 U.S.C. §§ 1132(a)(1)(B). (TB Aff., Exhibit A.) As will be shown below, defendant improperly removed this matter to Federal Court as the Retention

Agreement which plaintiff is seeking payment under is neither "related" to the Displacement Program nor itself a "plan" under ERISA.

### A. The Retention Agreement is a Separate & Distinct Agreement Unrelated to the Mellon Displacement Program

An order remanding this matter to State Court is appropriate here as the Retention Agreement is not "related" to the Mellon Displacement Program.

Defendant takes the position in its removal papers that ERISA pre-empts plaintiff's State law claim for breach of contract as the "Transition Pay" due Mr. Van Cott under the Retention Agreement is a payment made under the terms of the Displacement Program. (TB Aff., Exhibit A.) The language of both the Retention Agreement and the Mellon Displacement Program Summary Plan Description undermine this position and establish that the Retention Agreement is, as plaintiff alleges in his Complaint, a separate and distinct agreement to pay benefits which, as discussed in detail, *infra*, is also not governed by ERISA. See, *Wigell v. Nappi*, 485 F.Supp.2d 142, 145 – 148 (N.D.N.Y. 2007); *Patel v. Sugen, Inc.*, 354 F.Supp.2d 1098 (N.D.CA 2005). (TB Aff., Exhibits B and C.).

The Displacement Program's Summary Plan Description specifically addresses the right of Mellon to make separate agreements with one or more of its employees regarding severance or other post-employment benefits that are not managed and overseen by the Displacement Program. (TB Aff., Exhibit C.) The Summary Plan Description states that one of the situations in which an employee may not be eligible for Displacement Benefits is:

> When the employee is covered by a separate agreement (either covering the employee individually or as a result of covering a group of employees which includes the employee) that provides compensation and/or benefits for periods following the employee's termination of employment ("Separate Agreement"), except where the Separate Agreement expressly provides that the employee shall remain eligible for benefits under the Program. (TB Aff., Exhibit C.)

Moreover, Mellon admits in its memorandum of law that the Displacement Program, not defendant, is the real party in interest that is responsible for payment of the benefits due under the Retention Agreement. (TB Aff., Exhibit D.) Finally, there is nothing in the Summary Plan Description that provides for the "Confidential Special Retention Package" presented to plaintiff. (TB Aff., Exhibit C.) Nor is there any indication or documentation that shows that the Retention Package was issued to plaintiff by the Displacement Program Manager, by someone acting on behalf of the Program Administrator, or "expressly" under the Displacement Program's terms. (TB Aff., Exhibits B and C.) Indeed, Mellon disclaims that the Retention Agreement is related to the Displacement Program. In a footnote at the end of the letter, Mellon states that "nothing in this [Retention Agreement] is to be construed as a notification of your *Displacement* under the Mellon Financial Corporation Displacement Program. See, *Patel v. Sugen, Inc.*, 354 F.Supp.2d at 1107 – 1109 (release agreement not "related" to referenced severance plan as severance plan provided for company to enter into separate written agreements relating to amount of separation benefits.)

Plaintiff's position is further supported by the fact that significant differences between the terms of the Displacement Program and the terms of the Retention Agreement. *Wigell v. Nappi*, 485 F.Supp.2d at 145 – 148 (N.D.N.Y. 2007). For example, the "Transition Pay" Mr. Van Cott is entitled to is more than he would be entitled to under the terms of the Displacement Plan. Under the Retention Agreement, Mr. Van Cott is entitled to 52 weeks of his salary ($300,000) without mitigation or risk of being cut off if he found other employment. (TB Aff., Exhibits A and B.) This sum far exceeds what Mr. Van Cott would have been entitled to under the Displacement Program. Under the terms of the Displacement Program, Mr. Van Cott would have received, at most, "Basic Displacement Pay" of two (2) weeks per year of service or approximately $80,000 (14 weeks of salary). (TB Aff., Exhibits B and C.) He would not have been entitled to "Extended Displacement Pay" because Mr. Van Cott had commenced new

5

employment with ACS before the "Basic Displacement Pay" had been exhausted. (TB Aff., Exhibits B and C.)

In addition, Mellon, not the "Program Manager," was to decide which company would provide plaintiff with Executive Outplacement. (TB Aff., Exhibits B and C.) There is also no indication under the Retention Agreement that Mr. Van Cott was entitled to continuing health benefits which are provided for under the Displacement Program. (TB Aff., Exhibits B and C.) The Retention Agreement also makes it clear that Mr. Van Cott's 52 week payment "shall be reduced by the full amount of the Displacement pay, Supplemental Unemployment Benenfits and/or separation or severance pay provided under a previously provided separate agreement . . . paid to you ". (TB Aff., Exhibits B and C.)[3] As such, there are distinct differences between the terms of the Displacement Program and the Retention Letter. See, Wigell v. Nappi, 485 F.Supp.2d at 145 – 148 (N.D.N.Y. 2007) (letter agreement was not related to company's severance plan as significant differences existed between the terms of the severance plan and the promised benefits).

While the Displacement Program is referenced in the Retention Agreement, it is done so to provide the parties with a guideline / formula as to when Mr. Van Cott would be eligible for the "Transition Pay."  What Mellon (who drafted the Agreement) did was simply point to the definition of Displacement instead of transcribing it into the Agreement itself so that the parties would understand when the triggering event occurred.  See, Eide v. Grey Fox Technical Services Corporation, 329 F.3d 600, 606 – 607 (8th Cir. 2003) (ERISA not applicable as benefits under oral agreement were not to be delivered under the company plan even though the formula in the plan was used to calculate the amount of benefits due each employee); Crews v Gen. Am. Life Ins. Co., 274 F.3d 502, 505 -506 (8th Cir. 2001) (promised benefits are free-

---

[3] It should also be noted the amount of the Supplemental Retention Bonus Award Mr. Van Cott was eligible for under the Retention Agreement was to be in the "sole discretion" of plaintiff's supervisor Mr. James Aramanda, Vice Chairman and Sector CEO of HR&IS. Mr. Aramanda was plaintiff's boss and there is no evidence his authority stems from the Displacement Program. (TB Aff., Exhibits B and C.)

6

standing and not premised on existing plan.) Consequently, ERISA is not implicated as the Retention Agreement is not related to the Displacement Program.

### B.     The Retention Agreement is Not a "Plan" under ERISA

If the court agrees with plaintiff that the Retention Agreement is a separate promise to pay benefits unrelated to the Displacement Program, then the next issue for the court is whether the Retention Agreement itself is a "plan" under ERISA. See, *Wigell v. Nappi*, 485 F.Supp.2d at 145 – 148 (N.D.N.Y. 2007).

Whether a particular agreement or program to pay post-employment benefits is a "plan" under ERISA is dependent upon, in part, whether that program or agreement "requires an ongoing administrative program to meet the employer's obligations." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11, 107 S. Ct. 2211 (1987). When interpreting whether a particular agreement to pay benefits is a "plan" the Second Circuit has delineated three basic factors to be considered. A "plan" may exist:

> (1) where an employer's undertaking required managerial discretion, that is, where the undertaking could not be fulfilled without ongoing, particularized, administrative analysis of each case; (2) where a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits; (3) where the employer was required to analyze the circumstances of each employee's termination separately in light of the certain criteria. *Sheer v. Israel Discount Bank of New York*, 2007 U.S. Dist. LEXIS 16488 (S.D.N.Y).

Each situation should be determined on a case by case basis as there is no one factor which is more important than another, and the Court is free to consider other factors if it so finds them relevant. *Sheer v. Israel Discount Bank of New York*, supra, citing, *Tishman v. ITT/Sheraton Corporation*, 145 F.3d 561 (2d Cir. 1998). Provisions in an agreement that call for a "one-time, lump-sum payment triggered by a single event," are not "plans" under ERISA because they require "no administrative scheme" in order for the employer to meet its obligations. *Id.* citing *Fort Halifax* 482 U.S. at 12. Nor is it of

a moment that the benefits offered were to more than one employee. See, e.g., *Taverna v. Credit Suisse First Boston (USA), Inc.*, 2003 U.S. Dist. LEXIS 1607 (S.D.N.Y.)

In applying the above factors to the case at bar, the proper conclusion to reach is that the Retention Agreement is not a "plan" under ERISA. First, Mellon's undertaking does not require ongoing managerial discretion. There is no discretion as to the amount or timing of the severance benefit as Mr. Van Cott is entitled to 52 weeks of his base salary paid in either a lump-sum or over 52 weeks on regular pay dates.[4] See, *James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463 (2d Cir. 1993); see also, *Fludgate v. Mngt. Tech., Inc.*, 885 F. Supp. 645, 648 - 649 (S.D.N.Y. 1995) (payment of salary and benefits over 24 month period did not make post-employment payment arrangement with executive in an employment agreement a "plan"); *Plante v. Foster, Klima & Company, LLC*, 2004 U.S. Dist. LEXIS 19725 (D.Minn) (same); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (continuation of benefits as part of severance does not make it a "plan"); *Hijeck v. United Technologies Corp*, 24 F. Supp.2d 243 (Conn. 1998) (same).

Second, there could clearly be no expectation on the part of Mr. Van Cott that the Retention letter was an ongoing commitment to pay benefits. There were no ongoing obligations and monitoring on the part of plaintiff or Mellon after the termination occurred and the Retention Agreement monies were paid. *Sheer v. Israel Discount Bank of New York*, 2007 U.S. Dist. LEXIS 16488; see also, *Fludgate v. Management Technologies, Inc.*, 885 F. Supp. at 648 – 649; compare, *Tishman v. ITT/Sheraton Corporation*, 145 F.3d 561 (ERISA governed claim because employees had ongoing obligation "to be available" to render services to defendant after employment ended); *Schonholtz v. Long Island Jewish Med. Ctr.*, 87 F. 3d 71, 75 (2d Cir. 1996) (ERISA governed claim because employee had to make reasonable attempts to find other employment or the severance payments would cease). In addition, the Retention

---

[4] The same can be said of the Retention Bonus and the Supplemental Bonus called for in the Retention Agreement. (TB Aff., Exhibit B.)

8

Agreement provided that the eligibility for this "Transition Pay" was dependent upon the happening of a discreet event related to the "Closing" of the sale of HR&IS. (TB Aff., Exhibit B.) Should Mellon have decided to retain the HR&IS business Mr. Van Cott's right to receive the payments set forth in the Retention Agreement would have ceased. (TB Aff., Exhibit B.)

Third, there is no managerial discretion on whether to award the "Transition Pay" with regard to Mellon. If Mr. Van Cott was "Displaced" Mellon, not the Displacement Program, was obligated to make the payment without discretion. See, *Sheer v. Israel Discount Bank of New York*, 2007 U.S. Dist. LEXIS 16488. (TB Aff., Exhibits A, B, C and D.)

In *Taverna v. Credit Suisse First Boston (USA), Inc.*, *supra*, the defendant-employer was outsourcing its payroll department and offered a separation agreement to select employees where in exchange for a release of claims plaintiff would receive severance equal to a month per year of service, outplacement assistance and continuing medical coverage under COBRA. 2003 U.S. Dist. LEXIS 1607 at 7. Select employees were also offered a transition agreement to entice them to stay with the defendant-employer through a date certain. *Id*. If they did, the employees would receive an additional one month's salary for each full month worked during the transition period plus a discretionary bonus to be paid after the end of the transition period. *Id*. at 1-5. Both agreements required the plaintiff to continue performing in a satisfactory manner. The plaintiff worked through the transition period but was not offered either agreement. *Id*.

The plaintiff in *Taverna* instituted an action under ERISA to recover benefits under both the severance and transition agreements. *Id*. The defendant moved to dismiss on the grounds that neither the separation agreement nor the transition agreement constituted ERISA "plans." *Id*. Following the Second Department's three-part test, the district court agreed with the defendant finding that separation agreement was not a "plan" because (a) calculating one-month per year of service was a simple arithmetic calculation; (b) determining whether an employee was satisfactorily performing was a "minimal" exercise of discretion; and (c) there was

9

no reasonable belief that this was to be an "ongoing commitment" to provide benefits as the employees were told there last day of work would be June 11, 2001. *Id.* at 8 – 11. In addition, the district court found that for similar reasons the transition agreement was also not a "plan." *Id.* It held this way despite the fact that the transition agreement required a release of claims and part of the transition payment was entirely discretionary. *Id.* at 11 -14.

While each case turns on its own set of facts and should be determined on a case by case basis, it is plaintiff's position that the facts of the case and the findings of the district court in *Taverna* support a basis for making a similar finding that the Retention Agreement was not a "plan" under ERISA. Accordingly, this court lacks subject matter jurisdiction over plaintiff's breach of contract claim.

## II.     PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY FEES

In the event the court grants plaintiff's motion to remand, plaintiff requests that the court order the award of plaintiff's just costs and actual expenses, including attorney fees, as allowed in the court's discretion where removal was improper under 28 U.S.C. §1447(c).

## CONCLUSION

Wherefore, plaintiff respectfully requests this Court remand this matter back to State Court for further proceedings award plaintiff costs and attorneys fees pursuant to 28. U.S.C. §1447(c).

Dated: New York, New York
August 16, 2007

HIMMEL & BERNSTEIN, LLP

By: _____
TRACEY S. BERNSTEIN (TB-0405)
Attorneys for Plaintiff
928 Broadway, Suite 1000
New York, NY 10010
(212) 631-0200

10