Paul R. Rooney (PR-0333)
REED SMITH LLP
599 Lexington Avenue, 28th Floor
New York, New York 10022
(212) 521-5400

Attorneys for Defendant
Mellon Financial Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

RAYMOND VAN COTT            :        07 Civ. 5578 (MGC) (RLE)
                            :
            Plaintiff,      :        ECF FILED
    - against -             :
                            :
MELLON FINANCIAL CORPORATION :
                            :
            Defendant.      :
-------------------------------------------------------X

### DEFENDANT MELLON FINANCIAL CORPORATION'S BRIEF
### IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Dated: September 14, 2007
        New York, New York

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

PROCEDURAL HISTORY .....................................................................................2

ARGUMENT ..........................................................................................................4

    I.    THE DISPLACEMENT PROGRAM IS AN ERISA PLAN. ...........................4

    II.    PLAINTIFF'S COMPLAINT IS COMPLETELY PREEMPTED .................6

        A.    Plaintiff's Complaint Is Preempted By ERISA....................................6

        B.    Plaintiff's Claim Is Completely Preempted By ERISA. .........................8

III.    PLAINTIFF'S APPROACH TO REMOVAL IS OFF TARGET. ...........................10

        A.    There Is No "Retention Agreement".....................................................10

        B.    Defendant Does Not Allege That The "Retention Agreement" Is An ERISA Plan. ..............................................................................11

        C.    Plaintiff's Proffered Case Law Is Inapposite. .......................................12

CONCLUSION ......................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004)...............................................................1

Allstate Insurance Co. v. 65 Security Plan, 879 F.2d 90 (3d Cir. 1989) .............................6

Bast v. Keystone Insurance Co. of America, 150 F.3d 1003 (9th Cir. 1998).....................7

Bogue v. Ampex Corp., 976 F.2d 1319 (9th Cir. 1992) ......................................................5

Corcoran v. United HealthCare, Inc., 965 F.2d 1321 (5th Cir. 1992) ...............................7

Crews v. General Amer.Life Insurance Co., 274 F.3d 502 (8th Cir. 2001)........................4

Dukes v. U.S. Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995).................................................6

Donald J. Trump Casino Securities Lit.-Taj Mahal Lit., 7 F.3d 357 (3d Cir. 1993) ...........4

Eide v. Grey Fox Technical Services Corp., 329 F.3d 600 (8th Cir. 2003).........................4

FMC Corp. v. Holliday, 498 U.S. 52 (1990) .......................................................................7

Fludgate v. Management Technologies, Inc., 885 F. Supp. 645 (S.D.N.Y. 1995)..............4

Gilbert v. Burlington Industries, Inc., 765 F.2d 320 (2d Cir. 1985) ....................................1

Gollomp v. Trump, 510 U.S. 1178 (1994)............................................................................4

Hijeck v. United Technologies Corp., 24 F. Supp. 2d 243 (D. Conn. 1998)......................4

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990) .....................................................7

James v. Fleet/Norstar Financial Group, Inc., 992 F.2d 463 (2d Cir. 1993) ......................3

Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58 (1987) ..................................1, 2, 6

Noyes v. DecisionOne Corp., 2003 WL. 1962322 (E.D.Pa. April 22, 2003).....................3

Patel v. Sugen, Inc., 354 F. Supp. 2d 1098 (N.D. Calif. 2005)............................................4

Pension Benefit Guaranty Corp. v. White Consolidated Industrial, Inc., 998 F.2d
    1192 (3d Cir. 1993).........................................................................................................2

Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987) ...................................................6

Plante v. Foster Klima & Co., 2004 U.S. Dist. LEXIS 19725 (D.Minn. Sept. 30,
    2004) ...............................................................................................................................4

<u>Plumbing Industrial Board, Plumbing Local Union No. 1 v. E.W. Howell Co.,</u>
  <u>Inc.</u>, 126 F.3d 61 (2d Cir. 1997) ..................................................................1

<u>Pryzbowski v. U.S. Healthcare, Inc.</u>, 245 F.3d 266 (3d Cir. 2001) ....................................1

<u>Rea v. The Hershey Company 2005 Enhanced Mutual Separation Plan</u>, 2007 WL.
  776882 (M.D.Pa. Mar. 12, 2007)....................................................................2, 3

<u>Rubio v. Chock Full O'Nuts Corp.</u>, 254 F. Supp. 2d 413 (S.D.N.Y. March 31,
  2003) ..........................................................................................................3

<u>Sheer v. Isreal Discount Bank of New York</u>, 2007 U.S. Dist. LEXIS 16488
  (S.D.N.Y. March 7, 2007)................................................................................4

<u>Smith v. Dunham-Bush, Inc.</u>, 959 F.2d 6 (2d Cir. 1992)....................................................1

<u>Taverna v. Credit Suisse First Boston, Inc.</u>, 2003 U.S. Dist. LEXIS 1607
  (S.D.N.Y. Feb. 2, 2003) ..................................................................................3

<u>Tischmann v. ITT/Sheraton Corp.</u>, 145 F.3d 561 (2d Cir. 1998) ........................................5

<u>Tolton v. American Biodyne, Inc.</u>, 48 F.3d 937 (6th Cir. 1995) ..........................................7

<u>Wigell v. Nappi</u>, 485 F. Supp. 2d 142 (N.D.N.Y. 2007) ....................................................4

## **STATUTES**

29 C.F.R. § 2510.3-1(a)(3)...............................................................................................5

29 U.S.C. § 1001............................................................................................................2

29 U.S.C. § 1002(1) .......................................................................................................5

29 U.S.C. § 1132(a)(1)(B) ............................................................................................2, 8

29 U.S.C. § 1132(a) ....................................................................................................6, 8

29 U.S.C. § 1144............................................................................................................8

29 U.S.C. § 1144(a) .......................................................................................................7

## PRELIMINARY STATEMENT

On July 6, 2005, Plaintiff's counsel wrote to Audrey Bonnett, Plan Manager of the Mellon Financial Corporation Displacement Program[1] ("Displacement Program"), stating:

> By this letter I am making a claim on Mr. Van Cott's behalf for severance benefits under the Mellon Financial Corporation Displacement Program (the "Program") and his [Confidential] Special Retention Package dated December 3, 2004.

Attachment 4 to the Declaration of Audrey F. Bonnett ("Bonnett Decl."). (Brackets added).

The "Confidential Special Retention Package" referenced in counsel's letter provides that, if Plaintiff is found eligible for benefits under the Displacement Program, which includes ordinary severance pay (Displacement Pay), then he will receive additional or enhanced severance pay (Transition Pay[2]). Attachment 3 to the Bonnet Aff.; Exhibit B to the Bernstein Decl.

After review, the Displacement Program determined that Plaintiff was not entitled to severance benefits because he was not "Displaced" as defined by the terms of the Displacement Program. That is, *because Plaintiff was not eligible for severance pay* and other benefits under the Displacement Program, *he was not entitled to extra severance pay and outplacement services either.*

There is only *one* determination that governs both severance pay and enhanced severance pay. Plaintiff's entitlement to enhanced severance pay *is inseparable* from his entitlement to ordinary severance pay and other benefits under the Displacement Program. Plaintiff's entitlement to the *enhanced* severance pay he seeks in this case requires that he *first* be

---

[1]     A copy of the Displacement Program may be found as Attachment 1 to the Affidavit of Audrey F. Bonnett ("Bonnet Aff.") and as Exhibit C to the Declaration of Tracey S. Bernstein, Esq. ("Bernstein Decl.").

[2]     Transition Pay available through the Confidential Special Retention Package is nothing more than *enhanced* severance pay (and outplacement services) because, although it is stated in generous terms, transition severance pay is offset by the amount of severance pay that is due and payable under the Displacement Program itself. One could characterize Transition Pay as a way to increase or top off severance pay already available under the Displacement Program.

found eligible for benefits by the Displacement Program. Plaintiff cannot leap frog this situation and have this Court find that he is entitled to *enhanced* severance pay, without the Court reversing the decision of the Displacement Program and finding that Plaintiff, *eo ipso,* was entitled to benefits under the terms of this ERISA[3] plan as well.

Plaintiff's present motion to remand comes down to this: Plaintiff must be found eligible for ERISA benefits under the Displacement Program, in order to received extra severance pay under the Confidential Special Retention Package. There is no dispute that the Displacement Program is an ERISA plan. Whether Plaintiff is entitled to Displacement Program benefits is a question, claim or issue within the scope of the exclusive enforcement provisions of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). As a result, ERISA completely preempts Plaintiff's state law cause of action for enhanced severance pay, makes it Federal in nature, and removable. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

## PROCEDURAL HISTORY

Given that the Complaint was artfully pled to avoid asserting a federal cause of action under ERISA, the following procedural and factual history simply provides context for the present motion, and is based upon the Complaint and the governing benefit documents, which have been attached to the Bernstein Decl. and the previously filed Bonnett Aff.[4]

Plaintiff was an employee of that portion of Mellon HR Solutions, LLC ("HR&IS") that was sold to Affiliated Computer Services ("ACS") as of May 25, 2006.

---

3    Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.,* as amended ("ERISA").

4    In addressing a Rule 12(b)(6) motion, the court may generally consider exhibits attached to the complaint and authentic documents submitted by the defendant upon which plaintiff's complaint is premised, in addition to the allegations asserted therein. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994); accord *In Re Donald J. Trump Casino Securities Lit.- Taj Mahal Lit.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (holding district court properly considered prospectus appended to motion to dismiss by defendants, where plaintiffs' claims were based upon the document and plaintiffs failed to attach the document to their complaint), *cert. denied sub nom Gollomp v. Trump*, 510 U.S. 1178 (1994).

Complaint at ¶ 12. In December 2004, prior to the sale, Plaintiff was given Notice of a "Confidential Special Retention Package" informing him of his potential right to become eligible for certain benefits, since he was considered an employee "instrumental in the divestiture and related transition." Bernstein Decl., Exhibit B; Bonnett Aff., Attachment 3; *see* Complaint at ¶ 15.

The Notice begins by identifying six initial preconditions to receiving the Confidential Special Retention Package. Assuming these conditions were met, there were three compensatory elements to the package. First, a Retention Bonus Award would be paid to Plaintiff in the amount of $300.000; it was paid. Second, a Supplemental Retention Bonus Award, representing from 0 to 6 months base salary; it was paid, as well. Finally, there was a Transition Package. The Transition Package consisted of the payment for outplacement services and fifty-two weeks of severance pay – another $300,000 in Plaintiff's case. Although facially stated in generous terms, the severance benefit was an enhanced severance benefit, because it was to be reduced by those which were found to be due and payable under the Displacement Program, as well as by any supplemental unemployment benefits or severance pay available under any separate arrangement.

The Transition Package payments were not automatic or mechanical, however. The second page of the Notice stated:

> In addition to the Retention Bonus Award and Supplemental Retention Bonus Award, you may be eligible for a Transition Package, if you are *Displaced* in accordance with the Mellon Financial Corporation Displacement Program as a direct result of the *Closing* and you execute a Confidential Separation Agreement and Release waiving any potential claims against Mellon.

Attached to the Notice was a copy of the Displacement Program Plan document/Summary Plan Description. Thus, to receive Transition Pay, Plaintiff had to be found eligible for Displacement Program benefits "in accordance with" the terms and administrative procedures of the Displacement Program. Complaint at ¶ 17(c).

- 3 -

Plaintiff, quoting the Displacement Program in his Complaint, claims that he met its definition of "Displaced" due to a "significant change in responsibilities from those assigned to [plaintiff] immediately prior to the sale or transfer." Complaint at ¶ 30.

Plaintiff filed his initial claim for Displacement Program benefits and Transition Pay, in accordance with its claims and appeals procedures, on July 6, 2005.

This claim was denied by the Program Manager of the Displacement Program on October 3, 2005.  Bonnett Aff. at ¶ 3.

On October 18, 2005, the Plaintiff appealed the initial denial of his claim, again in accordance with the procedures of the Displacement Program.  (A copy of the appeal may be found at Attachment 5 to the Bonnett Decl.).

On February 15, 2006, the Plan Administrator of the Displacement Program denied Plaintiff's appeal, finding that the Plaintiff was not "Displaced" in accordance with its terms.  The Plan Administrator expressly denied Plaintiff's claim for benefits under the Displacement Program benefits and the Transition Package.  (A copy of the Displacement Program's Appeal Denial of February 15, 2006 may be found as Attachment 2 to the Bonnett Aff.).

Plaintiff filed the present lawsuit against the payer of the benefit, Mellon Financial Corporation, not the separate, legal entity that alone makes the determination regarding benefit entitlement.

## ARGUMENT

### I.    THE DISPLACEMENT PROGRAM IS AN ERISA PLAN.

Mellon Financial Corporation maintains the Displacement Program for the purpose of providing benefits and extending benefit coverages to employees who are displaced from their jobs for business reasons not related to individual performance.  Displacement Program at page 1.  The Plan document/Summary Plan Description makes it clear that the

- 4 -

Displacement Program existed prior to October 18, 1999 when it was known as the Mellon Bank Corporation Displacement Program. *Id.*

There is no dispute between the parties that the Displacement Program is an ERISA Plan under ERISA §3(1); Plaintiff does not challenge this in his Brief.    In addition to providing benefits under its terms, the Displacement Program's determination that a participant is eligible for Displacement Program benefits provides a "gatekeeper" function - as it also triggers a participant's eligibility for benefits under some of the other ERISA plans maintained by Mellon Financial Corporation.  Some Displacement Program benefits are benefits enumerated under ERISA § 3(1), 29 U.S.C. § 1002(1) and some are not.  Severance benefits and benefits under the Mellon Flexible Benefits Program, Mellon 401(k) Retirement Savings Plan, Mellon Bank Retirement Plan, COBRA, etc. are enumerated benefits.  *Id.*; 29 C.F.R. § 2510.3-1(a)(3).  An additional sixty (60) days of club membership is not.

The enhanced severance pay (sometimes referred to as "Transition Pay") sought in this case is an enumerated benefit under ERISA.  Entitlement, however, is contingent upon a finding by the Displacement Program that an eligible employee has been, *inter alia*, Displaced.

Under *Tischmann v. ITT/Sheraton Corp.,* 145 F.3d 561 (2d Cir. 1998), three issues should be considered in determining whether a plan is governed by ERISA: (1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceived an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.

As in *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992), *cert. denied,* 507 U.S. 1031 (1993), where the plan had to make a determination whether employment with a successor was "substantially equivalent," the Displacement Program sets out a number of determinations and criteria that may come into play in any given situation.  In addition, the ten (10) page February 15, 2006 appeal denial letter (Attachment 2 to Bonnett Aff.) itself illustrates the level

- 5 -

of managerial discretion required in the administration of this ERISA Plan. The Plan Administrator had to address several criteria, such as the exception relating to corporate transactions in which employees are transferred to the buyer, and whether Plaintiff's new position involved a "significant change in responsibility." Second, the fact, that the Displacement Program is long-standing, is sufficient support for the ongoing commitment that any reasonable employee would recognize and appreciate. Finally, there is no doubt that each employee termination requires analysis in order to determine whether he or she is entitled to benefits under the Displacement Program's terms.

There is nothing automatic or mechanical about benefit eligibility under the Displacement Program for either its benefits or the enhanced severance pay sought in this case.

## II.     PLAINTIFF'S COMPLAINT IS COMPLETELY PREEMPTED.

Cases that are within the scope of ERISA's civil enforcement scheme are an exception to the general rule which permits removal of a case to federal court only when a plaintiff's "well-pleaded complaint" raises issues of federal law. *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 66 (1986). To be removable, however, it is not enough that a state law claim be preempted by ERISA; it must also be "completely preempted." *Id.; Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 354 (3d Cir. 1995); *Allstate Ins. Co. v. 65 Security Plan*, 879 F.2d 90 (3d Cir. 1989).

## A.     Plaintiff's Complaint Is Preempted By ERISA.

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), the United States Supreme Court made it clear that ERISA § 502(a) sets forth a "comprehensive civil enforcement scheme" which Congress intended to be "exclusive," and that the continued existence of "varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to

the purposes and objectives of Congress." *Id.* at 52.[5]  The Court held that ERISA § 514

preempts and supersedes state law causes of action which relate to employee benefit plans,

regardless of whether state laws are designed to affect such plans; the "relate to" language of

ERISA § 514 must be given an expansive reading. *Id.* at 44-46; *FMC Corp. v. Holliday,* 498

U.S. 52, 58 (1990) (ERISA preemption provision is conspicuous for its breadth); *Ingersoll-Rand

Co. v. McClendon,* 498 U.S. 133, 144-45 (1990) (Congress expressly included in ERISA a

broadly worded preemption provision).

Plaintiff seeks to have this Court reverse the decision of the Displacement

Program, that he was not "displaced" under its terms.  That is the only decision that stands in the

way of both Displacement Program benefits and Transition Pay.  Plaintiff is either entitled to

both or neither.  There is no Solomon-like solution; the Court cannot uphold the decision of the

Displacement Program and find Plaintiff "Displaced" at the same time for purposes of enhanced

severance pay.  A claim for Transition Pay is necessarily a claim for Displacement Program

benefits.

As the Third Circuit concluded:

Thus, suits ... for denial of benefits, even when the claim is couched in
terms of common law negligence or breach of contract, have been held to
be preempted by § 514(a).  See, e.g., *Bast v. Keystone Ins. Co. of Am.,* 150
F.3d 1003, 1007-08 (9th Cir. 1998) (holding that § 514(a) preempted,
among other things, a claim alleging bad faith denial of benefits); *Tolton v.
American Biodyne, Inc.,* 48 F.3d 937, 941-43 (6th Cir. 1995) (holding that
§ 514(a) preempted claims for wrongful death, medical malpractice, and
insurance bad faith based on a refusal to authorize treatment); *Corcoran v.
United HealthCare, Inc.,* 965 F.2d 1321, 1331-34 (5th Cir. 1992) (holding
that § 514(a) preempted a wrongful death action based on the negligent
denial of benefits).

The rationale for these holdings is that the decision whether a requested
benefit or service is covered by the ERISA plan falls within the scope of

---

5      Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states in relevant part:

Except as provided in subsection (b) of this section, the provisions of
this subchapter and subchapter III of this chapter shall supersede any
and all State laws insofar as they may now or hereafter relate to any
employee benefit plan....

the administrative responsibilities of the HMO or insurance company, and
therefore "relates to" the employee benefit plan.

*Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 278-279 (3d Cir. 2001) (underlining added).

Plaintiff's claim for Transition Pay "falls within the scope of the administrative responsibilities" of the Displacement program.  Plaintiff's Complaint seeks "to recover [severance and enhanced severance] benefits due to him" under Displacement Program.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)(brackets added).  Plaintiff's purported state law claim is necessarily an ERISA claim for benefits and, therefore, "relates to" the Displacement Program and is preempted by ERISA § 514, 29 U.S.C. § 1144.  *Gilbert v. Burlington Industries, Inc.,* 765 F. 2d 320, 325-27(2d Cir. 1985) (dismissing employee's state law and common law claims for severance pay as preempted by ERISA based upon finding that severance pay is an "employee welfare benefit plan" under ERISA).  Accordingly, his state law claim is preempted under ERISA § 514(a).

**B.  Plaintiff's Claim Is Completely Preempted By ERISA.**

The only remaining issue is whether Plaintiff's claim is merely preempted or "completely preempted?"

The preemptive force of ERISA § 514, pales with that of ERISA § 502(a):

> The pre-emptive force of ERISA § 502(a) is still stronger...*Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).  Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Metropolitan Life,* 481 U.S., at 65-66, 107 S.Ct. 1542.  Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.,* at 66, 107 S.Ct. 1542.

*Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004).

As the Second Circuit explained in *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co., Inc.,* 126 F.3d 61, 66 (2d Cir. 1997), ERISA preemption provides a valid basis for removal jurisdiction if (1) the state law cause of action is preempted by ERISA,

- 8 -

and (2) that cause of action falls "within the scope" of the civil enforcement provisions of ERISA §
502(a), 29 U.S.C. § 1132(a).

       As pertinent here, ERISA §502(a)(1)(B) grants a participant two distinct interests
or rights to:  (1) *obtain benefits* under the terms of a plan, (2) *clarify rights to future benefits*
under a plan.  These §502(a)(1)(B) protected interests are at the core of Plaintiff's claims and
actually serve as preconditions for any enhanced severance pay he seeks.  The language of
ERISA §502(a)(1)(B), authorizing an action to *obtain benefits* or *clarify rights to future benefits*,
encompasses Plaintiff's claim for Transition Pay that is available only if he is found Displaced
under the Displacement Program.

       What Plaintiff is attempting to do is create a distinction between the benefit he
seeks and the ERISA plan that must make a determination as to his eligibility for them.  The
Second Circuit has rejected this argument before.

> Appellant also attempts to distinguish his action as one involving only his
> benefits, not an ERISA plan.   On the contrary, the existence of the
> Dunham-Bush pension plan is inseparably connected to any determination
> of liability under state law.   As the *Ingersoll-Rand* Court noted, in
> substantially similar circumstances, "The [Connecticut] cause of action
> makes specific reference to, and indeed is premised on, the existence of a
> pension plan.... Because the court's inquiry must be directed to the plan,
> this judicially created cause of action 'relate[s] to' an ERISA plan." 111
> S.Ct. at 483.

*Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 11 (2d Cir. 1992).

       "[P]roperly construed" as *Taylor* requires, Plaintiff's overarching claim is that the
decision of the Displacement Program was in error when it found that he was not Displaced.
Thus, Plaintiff's cause of action falls within the scope of ERISA § 502(a)(1)(B), is completely
preempted, and is removable.

### III.     PLAINTIFF'S APPROACH TO REMOVAL IS OFF TARGET.

#### A. There Is No "Retention Agreement."

Plaintiff argues:

> Defendant removed this case from State Court on the ground that plaintiff's breach of contract claim seeking payment of severance under the terms of a Retention Agreement is preempted by ERISA as, according to defendant, plaintiff is seeking to recover benefits under an "employee welfare benefit plan." ...[D]efendant improperly removed this matter to Federal Court as the Retention Agreement which Plaintiff is seeking payment under is neither "related to" the Displacement Program nor itself is a "plan" under ERISA."

Plaintiff's Memorandum of Law in Support of Motion to Remand at p. 3-4.

Plaintiff's Memorandum makes multiple references to a "Retention Agreement." No such thing exists by that name. "Retention Agreement" is a term Plaintiff creates and introduces in his Complaint at ¶ 15. The use of the word, "Agreement," is subtle, because it suggests that there were negotiations or a meeting of the minds. It suggests that there is an independent existence or contract. Plaintiff then purports to bring an action to recover for a breach of this "agreement." There is no separate agreement and, in fact, Plaintiff did not attach a copy of the alleged "agreement" to his Complaint. In short, Plaintiff's Complaint was artfully pled to avoid his claim's complete preemption by ERISA.

Rather, the arrangement in question is the above-described and discussed "Confidential Special Retention Package," which is referenced in paragraph 15 of the Complaint and attached as Exhibit B to the Bernstein Declaration. It provides that severance payments offset by those directly available under the Displacement Program will be paid, if and only if, one is found Displaced in accordance with the Displacement Program. Such a finding would have been a finding that Plaintiff qualified for Displacement Program benefits.

- 10 -

**B.**    **Defendant Does Not Allege That The "Retention Agreement" Is An ERISA Plan.**

> Plaintiff states:
>
> If the court agrees with plaintiff that the Retention Agreement is a separate promise to pay benefits unrelated to the Displacement Program, then the next issue for the court is whether the Retention Agreement itself is a "plan" under ERISA.

Plaintiff's Memorandum at p. 7.

As explained at the outset, the Confidential Special Retention Package consisted of three elements. The Retention Bonus Award and Supplemental Retention Bonus Award are not at issue. What is at issue is Transition Pay under the Transition Package.

Defendants do not accept the issue as framed by the Plaintiff above and do not take a formal position regarding it. Plaintiff's state law claim contains, as an essential element, that he be found Displaced in accordance with the Displacement Program. No further reference to an ERISA plan is necessary. *See Ingersoll-Rand, supra; Smith, supra.* If the Displacement Program found that the Plaintiff had been Displaced, he would have been eligible for all of the benefits of the Displacement Program, including an extended period in his Club memberships – a non-ERISA benefit – and Transition Pay.

*Rea v. The Hershey Company 2005 Enhanced Mutual Separation Plan,* 2007 WL 776882 (M.D.Pa. Mar. 12, 2007), is instructive. There, Rea sought benefits under the Key Employee Incentive Plan ("KEIP"), a non-ERISA plan, that were available only if he were found eligible for benefit under the Hershey Company 2005 Enhanced Mutual Separation Plan ("EMSP"), an ERISA Plan. Rea tried to leap frog over a claim against EMSP and assert a state law claim for breach of contract for KEIP payments. The court granted defendant's motion to dismiss on the basis that this state law claim was preempted by ERISA. It held that the viability of Rea's state law claim was entirely dependent upon his denied claim for benefits under the ERISA plan.

Likewise, Plaintiff's state law breach of contract action for Transition Pay would require interpretation of the ERISA Plan:

- 11 -

> Thus, ERISA preempted the state claim because an action exclusively under the control of ERISA law – deciding whether to grant benefits – was a necessary element of the state-law cause of action.

*Rea*, 2007 WL 776882 at *9, *quoting, Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 588 (6th

Cir. 2006); *cf Noyes v. DecisionOne Corp.*, 2003 WL 1962322 (E.D.Pa. April 22, 2003)(plaintiff

filed amended complaint to drop claim under severance plan and substituting claim for breach of

alleged separate contract under letter offering enhanced severance benefits; claim held

completely preempted).

Similarly, in *Rubio v. Chock Full O'Nuts Corp.*, 254 F.Supp.2d 413, 433

(S.D.N.Y. March 31, 2003), plaintiff brought a breach of contract for defendant's failure to

provide for continued participation in a non-ERISA employee stock purchase plan. The district

court held that "although Plaintiffs' claim to recovery under a stock option plan is not covered by

ERISA, their eligibility to recover from the [stock option] plan 'relates to' an ERISA plan since

the Class' claim is based on the interpretation of § 7.4 of the ERISA Severance Plan." *Id. at 433.*

Thus, it does not matter whether the Transition Package or the Confidential

Special Retention Package is itself an ERISA plan. Plaintiff's state law claim contains as an

essential element reference to, and requires an interpretation of, an ERISA plan. Just as Plaintiff

filed a claim for both Displacement Program benefits and Transition Pay with the Plan

Administrator, so it is here that this Court cannot address the latter without addressing the

former. A decision as to the former necessarily entails the grant of the additional or enhanced

severance pay Plaintiff seeks in this case.

**C.    Plaintiff's Proffered Case Law Is Inapposite.**

The cases cited by Plaintiff are inapposite. The present case does not involve a

"stay-bonus," as in *James* and *Taverna.*[6] It does not involve buyout agreement or an

---

6     *James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463 (2d Cir. 1993); *Taverna v. Credit Suisse First Boston, Inc.*, 2003 U.S. Dist. LEXIS 1607 (S.D.N.Y. February 2, 2003).

employment agreement trumped up to be an ERISA plan, as in *Sheer*, *Fludgate*, and *Plante*.[7] It does not involve a one-time payment contingent upon a single one-time event, as in *Eide* and *Hijeck*.[8] It certainly does not involve two separate agreements that are insufficiently linked, as in *Wigell*, *Patel* and *Crews*.[9]

The present situation is that, if one is found eligible for benefits under an ERISA Plan, he or she would be paid more in severance than is set forth in the ERISA plan. This top-off on benefits was available to only a select few employees who were deemed important to the overall corporate transaction. But the extra severance is bound to the ERISA plan's determination on eligibility and cannot be separated from it. The Notice specifically incorporated the Displacement Program and was included as an attachment.

## CONCLUSION

The Transition Pay which Plaintiff seeks in this case tops-off the Displacement Pay (severance pay) available under the Displacement Program, an ERISA plan. This enhanced severance pay was not available to everyone who was Displaced under the Displacement Program, but only to a select group of management employees who received Notice of the Confidential Special Retention Package.

Plaintiff's lawsuit is an attempt to end-around the requirement that one be found Displaced "in accordance with" the terms of the Displacement Program. "Displaced" is a determination to be made in accordance with the Program and that means by the appropriate entity, the Plan Administrator, who is empowered to make determinations under the Program's

---

7    *Sheer v. Isreal Discount Bank of New York*, 2007 U.S. Dist. LEXIS 16488 (S.D.N.Y. March 7, 2007); *Fludgate v. Management Technologies, Inc.*, 885 F.Supp. 645 (S.D.N.Y. 1995); *Plante v. Foster Klima & Co.*, 2004 U.S. Dist. LEXIS 19725 (D.Minn. September 30, 2004).

8    *Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600 (8th Cir. 2003); *Hijeck v. United Technologies Corp.*, 24 F.Supp.2d 243 (D. Conn. 1998).

9    *Wigell v. Nappi*, 485 F.Supp.2d 142 (N.D.N.Y. 2007); *Crews v. General Amer.Life Ins. Co.*, 274 F.3d 502 (8th Cir. 2001); *Patel v. Sugen, Inc.*, 354 F.Supp.2d 1098 (N.D. Calif. 2005).

- 13 -

terms.  That determination necessarily implicates the full benefits available under the Displacement Program and no state law claim can usurp the Plan Administrator's function or isolate the enhanced severance from the base severance pay.  The definition of "Displaced" cannot be wrenched from the ERISA plan and be considered apart from its terms, context and administrative process.

The state law claim, here, necessarily incorporates, as an essential element, that Plaintiff be found Displaced in accordance with the Displacement Program.  Thus, the reference to the Program and the unavoidable need to interpret it makes Plaintiff's state law claim not just preempted by ERISA, but "completely preempted" by ERISA, thereby making it necessarily Federal in character and removable.

Respectfully submitted,

REED SMITH LLP

By: _____
Paul P. Rooney
599 Lexington Avenue
New York, New York  10022
(212) 521-5435

Attorneys for Mellon Financial Corporation

Dated: September 14, 2007

- 14 -

## CERTIFICATE OF SERVICE

I, Paul P. Rooney, Esq., hereby certify that on September 14, 2007, I caused the

annexed DEFENDANT MELLON FINANCIAL CORPORATION'S BRIEF

IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND to be served upon Plaintiff's

counsel listed below by filing it with the Court by means of the Court's Electronic Case Filing

system pursuant to Fed. R. Civ. P. 5 and Local Civil Rule 5.2 and by mailing a copy by United

States Mail – First Class to the following address:

> Tracey S. Bernstein
> Himmel & Bernstein, LLP
> 928 Broadway, Suite 1000
> New York, New York 10010

PAUL P. ROONEY

Dated: September 14, 2007

NYLIB-437085.1-PPROONEY 9/14/07 9:53 AM